D. ANNA W. SALMON *v.* W. B. SMITH.

1. FRAUDULENT CONVEYANCE.   *Purchase by wife of debtor.  Chancery pleading. Point in issue.*

S., a judgment creditor of J., filed a bill against him and his wife, A., to subject to the payment of the judgment certain real property, the title of which was in the name of the wife, upon the allegation that the property really belonged to J., who, in pursuance of a scheme to defraud and defeat his creditors, had conveyed the legal title thereof to his brother D., and he, in furtherance of such scheme, conveyed the same to A., and if any money was paid by her in the purchase it was furnished by her husband, J.   The answer of the defendants denied these allegations, both as to the fraudulent conveyance and as to the payment by the wife with the husband's means.  *Held,* that the material issue presented by the pleadings is, not whether the wife paid for the property with her own money, but whether the conveyance by the husband to his brother was valid; for, if that was valid, it placed the title beyond the reach of the creditor, and the holder thereof might even have given the property to the wife if he chose to do so.

2. SAME. *Pleadings in respect thereto. Hidden assets. Relief.*

    Upon pleadings framed as above stated, with corresponding evidence, it is not proper for the court to render a decree subjecting the property to the complainant's judgment on the ground that the debtor's assets were put into it as purchase-money for the wife and in improvements thereon; such relief, upon that ground, being unauthorized by the scope of the litigation.

3. CHANCERY PRACTICE. *Answer of one defendant as evidence for another. Effect thereof.*

    The answer of one defendant to a bill in chancery, which is responsive and shows that the complainant is not entitled to the relief sought, enures to the benefit of a co-defendant as evidence; and if such answer be not overthrown, the complainant is not entitled to a decree against any defendant.

APPEAL from the Chancery Court of Tate County.

Hon. J. B. MORGAN, Chancellor.

W. B. Smith, having a judgment against J. M. Salmon, upon which execution had been issued and returned *nulla bona,* filed the bill in this cause against J. M. Salmon and his wife, D. Anna W. Salmon, to subject to his judgment certain real property, the legal title to which was in the name of D. Anna W. Salmon. The scope and purpose of the suit, the substantial import of the pleadings, and the conclusions of fact upon the evidence are sufficiently indicated in the opinion of the court to show the state of case to which the points of the decision are addressed.

Upon final hearing, the Chancery Court rendered a decree in favor of the complainant, declaring that the land, the subject of controversy, really belonged to J. M. Salmon, and not to his wife, and directing that unless he paid the judgment within a specified time the property should be sold for the satisfaction thereof. From this decision the defendants appealed.

*T. W. White,* for the appellant.

Complainant introduced no proof in regard to the transactions between J. M. Salmon and D. D. Salmon, his brother; no witness was examined on that point, and this part of the complainant's case consists alone in the unsupported allegations of the bill. No conveyances were made directly from J.

M. Salmon to his wife, but her right to the property held by her is assailed on the ground that she bought it with means derived from her husband, or received it from D. D. Salmon in pursuance of a fraudulent agreement between him and J. M. Salmon.

This branch of complainant's case he attempts to support by introducing proof as to the pecuniary condition of Emory Williams, the father of D. Anna Salmon, before and at the time of her marriage and afterwards, in which the effort is made to show that at the time of his daughter's marriage he was not in a condition to give her anything — at least nothing more than a horse, which his witnesses value at from $80 to $150, which she took home with her. But in this he wholly fails; since, in addition to the proved gift of the horse, it is shown that he was a man owning a plantation of a half-section of land, with a good lot of every kind of stock used on a plantation of that size, and that his credit was good. It is shown that he had a half-section of land, and stock; and no debts of his are shown except $700 due his uncle, Steve Williams, of which $277 was a security debt for one Gunter. It is also shown by all the witnesses, as well as Steve Williams, that Emory Williams, at the time his daughter married Salmon, in 1870, was free from debt, had plenty of personalty, and the tax-books show that he gave in debts due him. The tax-books show that in 1870 he gave in taxable personalty to the amount of $1,178, and in 1871 taxable personalty to the value of $525; and it is a significant fact that his daughter married in the year 1870.

The records show that D. Anna Salmon is fully sustained in her answer denying the allegation that all the money used by her in purchasing the property bought from D. D. Salmon and V. P. Stile was received from her husband. The proof shows that she bought the eighty acres of land from Gunter January 1, 1873, for $400. At that time her husband was in fine credit, and solvent. She had been married then three years. Some years afterwards, when she bought the property from D. D. Sal-

mon, and needed means, she borrowed $1,000 from J. H. Cocke, sold the Gunter land to W. S. Bailey for $625, and used the note in paying Salmon. She also borrowed $1,150 from Featherston and $900 from Fugas Hall, and gave trust-deeds on her property to secure it; and when she bought the land from Stile, she a few days thereafter executed a trust-deed to Carlock & Chambliss to secure them for money borrowed to pay for it. The deed from D. D. Salmon shows that part of the sale by him to D. Anna Salmon was on credit.

The proof further shows that J. M. Salmon had done a large business as a merchant for several years before the panic year 1873, and up to April 15th; that his dealings with Estes, Fizer & Pinson alone amounted to from $10,000 to $29,000 per year for six years; and it is not shown that he owed any debts except the four or five thousand dollars due them and the small debt due this complainant, and that Estes, Fizer & Pinson were willing to compromise with him by taking claims in full settlement of the amount due them.

I have failed to find anything in this record to rebut the presumption of fairness in the transaction attacked, or to overthrow the denials of the allegations of the bill by the sworn answers of the defendants. I would call the attention of the court to the fact that while the defendant Mrs. Salmon has disclosed, as she was not bound to do, the sources from whence she derived the means with which she paid for the property bought, complainant has failed to bring any of these persons forward as witnesses to overthrow the defendants' answer in this respect.

Now, it will not be necessary to quote authorities to the point that, to entitle complainant to subject the property of D. Anna Salmon to the judgment against J. M. Salmon, he must sustain the allegations of the bill that the conveyances to D. D. Salmon were fraudulent, that the conveyances to D. Anna Salmon are fraudulent, and that all the money used by her was derived from him. The rule is universal that fraud cannot be presumed, but must be proved by clear testi-

mony. And the defendant was not bound to introduce proof to show the *bona fides* of her transaction (which is presumed) until complainant has proved his allegations of fraud, which he has not done. The mere relation of brother with D. D. Salmon does not tend to prove fraud in the transactions with him, nor does the subsequent purchase of the same by Mrs. Salmon cast any cloud over the transactions.

*Shands & Johnson,* for the appellee.

Does the record show any evidence of fraud in the transactions impeached by the bill?

1. Embarrassment and heavy indebtedness are badges of fraud. Bump on Fr. Conv. 80; *Dick* v. *Grissom,* 1 Freem. Ch. 435; *Farmers' Bank* v. *Douglas,* 11 Smed. & M. 542; *Comstock* v. *Rayford,* 12 Smed. & M. 532. J. M. Salmon, in his answer, admits that at the time he was making the conveyance to his brother he was embarrassed and being pressed by his creditors.

2. "The expectation or pendency of a suit is a badge of fraud." Bump. on Fr. Conv. 81. See also *Johnston et al.* v. *Dick, Hill & McLean,* 27 Miss. 281. The record shows that J. M. Salmon was largely indebted, and that he knew his indebtedness would speedily ripen into judgment.

3. "Omission of the grantee to testify, or to produce the debtor or any other important witness, is the ground for an unfavorable presumption, and frequently exercises an important influence upon the final determination of the question of fraud." Bump on Fr. Conv. 95. It is certainly a very suspicious circumstance that neither J. M. Salmon nor D. D. Salmon, his brother, nor D. Anna W. Salmon, his wife, came upon the witness-stand to support the case set up by the answers of J. M. and D. Anna W. Salmon.

4. "Want of preciseness as to dates, time, and amount in their testimony, when produced, excites suspicion; for the facts occurring in a suspicious transaction would noticeably make an impression which would not be effaced from the memory very soon." Bump on Fr. Conv. 96. Neither of the

appellants, nor anybody else cognizant of the facts set out in their answers, testified in the cause, but we think the principle set out in the above quotation can be made to apply to the omission of dates, time, and amount in the answers of appellants.

5. "The facility with which a fictitious payment may be fabricated renders it necessary for the grantee to produce all the proof which may reasonably be supposed to be in his power of the reality and fairness of the transaction, and the want of clear proof is evidence of fraud. Such proof is vital to uphold a transfer in other respects surrounded with suspicion." Bump on Fr. Conv. 95. Assuredly, it is not unreasonable to suppose that the testimony of the three Salmons, and of Emory Williams, father of D. Anna W. Salmon, could have been produced.

6. "The retention of the possession of the land conveyed, and the exercise of unequivocal acts of ownership over it, is a badge of fraud." Bump on Fr. Conv. 90. *Farmers' Bank* v. *Douglas, supra; Johnston et al.* v. *Dick et al.,* 27 Miss. 281 ; *Stanton v. Green,* 34 Miss. 591. It is true that the deeds from J. M. Salmon to D. D. Salmon were put upon record soon after their execution, yet the allegation in the bill that J. M. Salmon so far retained control over the lot as to have valuable brick storehouses erected thereon in 1875, is not denied in either of the answers.

7. "Relationship is not a badge of fraud. * * * Any relation which gives rise to confidence, though not a badge of fraud, strengthens the presumption that may arise from other circumstances, and serves to elucidate, explain, or give color to the transaction. * * * Whenever this confidential relation is shown to exist, the parties are held to a fuller and stricter proof of the consideration and of the fairness of the transaction." Bump on Fr. Conv. 96 ; *Johnston et al.* v. *Dick et al., supra; Burke* v. *Murphy,* 17 Miss. 167; *Dick* v. *Grissom, supra.*

8. " The grantee's pecuniary inability to purchase is a suspicious circumstance." Bump on Fr. Conv. 93.

The recorded deed read in evidence by both parties, and all of appellee's testimony in the case, and the answers of appellant unsupported by proofs, and the conflict between the answers and the proofs, show, as we think, beyond peradventure, that not a dollar of the money that D. A. W. Salmon derived by gift from her father at the time of her marriage, nor a dollar of that borrowed by her afterward, went either into the purchase-money of the property in controversy or the houses built thereon ; or, to put it as mildly as the law will permit, she has not proven that a dollar so went, and our charges of fraud, collusion, and conspiracy, supported as they are by proofs, circumstances, and admissions, must be sustained.

9. "Whatever is out of the usual course betrays contrivance to give color to the transaction. If the departure from the usual course of business consists in an excess of precaution, it looks as though it might have been done for effect, to give the semblance of reality to that which is fictitious. It evinces a diffidence in the rectitude of the transaction and a correspondent solicitude to provide defences. When men's designs are correct, they are usually content to carry them into effect in the usual mode," etc. Bump. on Fr. Conv. 77, 92. The record in this cause contains many evidences of that unusual and excessive precaution referred to in the above quotation.

In her answer, D. Anna W. Salmon denies knowing anything of the conveyances by her husband to his brother, D. D. Salmon. But we think the facts and circumstances surrounding the case prove this to be untrue.

As to her allegations that her husband did not pay for these lots, nor improve them, we think that the record clearly shows them not to be true.

That J. M. Salmon " carries on all his business and trading and has all of his wife's transactions in his wife's name," so as to invest the proceeds of his skill and labor in her name, is a

fraud upon his creditors and in violation of law. She may employ and compensate him for his services. Such employment, however, must be in good faith, and not colorable. Under the proof in this cause, is J. M. Salmon contracted with by his wife and compensated for his labor, or does not this record show an attempt by him to make a voluntary conveyance of the products of his skill and labor to her? Is he not excluding his creditors from participation in the products of his skill and labor? Neither of them deny that he is acting for her as above stated. This is a badge of fraud. Bump on Fr. Conv. 271.

Both of these appellants in their answers deny all fraud and collusion and intent to defraud. To this we reply : " Fraud is a conclusion of facts and intentions, and although its existence is denied, if the admitted facts *conduce* to prove it, this must be held to outweigh the denial." *Dick* v. *Grissom,* *supra; Hendricks* v. *Robinson,* 2 Johns. Ch. 300.

CAMPBELL, J., delivered the opinion of the court.

The decree of the chancellor, when tested by what we are led, by the argument made here, to believe was made the especial subject of contention before him, is correct; but it is plain to our minds that the real matter of controversy presented by the record is different from that argued here, and, as we suppose, pressed on the attention of the chancellor.

The case stands thus, viz. : The bill is against husband and wife, to subject to the demand of the complainant property held by the wife as the result of a series of fraudulent acts of the husband to hinder and defraud his creditors. The charge is that the husband owned the property, and, as part of his scheme of fraud, conveyed the property sought to be reached by the bill to his brother, who served as a mere conduit to vest title in the wife of the grantor, which wife had no means with which to buy and pay for the property, and whatever money, if any, was used in the transactions was the husband's, and not the wife's. The husband answered the bill, denying

its allegations as to his alleged fraudulent transfer to his brother, and stating that the conveyance was made because of his indebtedness to his brother, and in payment of it, and in good faith.  The wife answered the bill, stating that she had no personal knowledge of the transaction between her husband and his brother, but that she purchased from the brother with her own means, and not with the means of her husband, as charged by the bill.

The answer of the husband is directly responsive to the bill as to the conveyance by him to his brother.  Both answers assert the possession by the wife of ample means to have made the purchase of the property.

The efforts on both sides seem to have been directed wholly to the contest over the question whether the wife had money of her own sufficient to have made the purchase, and the testimony makes it quite clear that she did not ; and if we regarded this as the test question of the case, we would agree with the chancellor.  But the real question is as to the validity of the conveyance by the husband to his brother.  If that was valid, it placed the title beyond the reach of the creditors, and the holder by such valid conveyance could give the property to the wife if he chose, and it was immaterial whether she had money of her own, and paid for it, or not.

The answer of the husband, responsive to the bill, asserts the valuable and sufficient consideration for his conveyance to his brother, and its good faith, and there is no evidence as to this.  Not a question was asked about it.  It seems to have been assumed in the progress of the cause that this was true, and that the title of the wife was to stand, or not, as it might be determined whether or not she purchased the property from the grantee of her husband with her own money.

If the separate answer of the husband, responsive to the bill, enured to the benefit of the wife, who answered separately, and did not answer as to the conveyance by her husband to his brother, further than to state her want of knowledge of it, it follows that the validity of that conveyance is established as

a fact in the case; and, that being established, no further inquiry is proper. This is an end of the controversy. This brings us to the question whether the answer of one defendant, responsive to the bill, enures to the advantage of a co-defendant as evidence in his favor.

It seems to be well settled, and on satisfactory grounds, that the answer of one defendant cannot be used against another defendant, unless under certain circumstances constituting an exception to the general rule. The text-books and cases abound with statements and illustrations of this rule and its exceptions; but there is strange silence in most of the text-books, and comparatively few cases in the reports, on the question of the effect of the answer of one defendant in favor of a co-defendant. In the text of Daniell's Chancery Practice and Pleading, voluminous and elaborate as it is, we have been unable to find an allusion to it, and this is true of other similar works. In a note to the fifth edition of Daniell's work we find this language: " But the answer of a defendant which is responsive to the bill is admissible as evidence *in favor* of a co-defendant (*Davies* v. *Clayton*, 5 Humph. 446); more especially where·such co-defendant, being the depositary of a chattel claimed by the plaintiff, defends himself under the title of the other defendant. *Mills* v. *Gore*, 20 Pick. 28. But see *Morris* v. *Nixon*, 1 How. (U. S.) 118; *Cannon* v. *Norton*, 14 Vt. 178." 1 Dan. Ch. Pr. 841, note 7.

In 3 Greenleaf on Evidence, sect. 283, is this language: "And though it is laid down as a general rule that *the answer of one defendant cannot be read by another defendant* as evidence in his own favor, yet the universality of this rule has been controverted, and it has been held that where the answer in question is unfavorable to the plaintiff, and is responsive to the bill by furnishing a disclosure of the facts required, it may be read as evidence in favor of a co-defendant, especially where the latter defends under the title of the former." Citing *Mills* v. *Gore*, 20 Pick. 28; *Miles* v. *Miles*, 32 N. H. 147; and *Powles* v. *Dilley*, 9

Gill, 222, which seem to fully support the text quoted. In *Miles* v. *Miles*, the case in 20 Pick. 28 and *Field* v. *Holland*, 6 Cranch, 8, are cited, and in the opinion of the court in the case cited as in 9 Gill, 222, it is stated as a just inference from the cases cited in argument " that it has been the practice of the Chancery Court, hitherto unchallenged," to read the answer of one defendant in favor of another defendant. It was said in that opinion that only one English case was referred to as bearing on the question, and it was not in point, because of the peculiar facts as not presenting the question for decision.

The case cited in the note to Daniell's work, mentioned above, from 1 How. (U. S.) 118, contains no announcement by the court of any rule on the subject further than may be inferred from the declaration that the court was *not influenced* by the answer of one of the defendants in coming to its conclusion. The case in 15 Vt. 178 contains the declaration by the court that " the answer of one of the defendants is not evidence for the other."

In *McKim* v. *Thompson*, 1 Bland, 160, the chancellor said : " It is, in general, true that the answer of one defendant cannot be used as evidence for or against another defendant ; " but in his opinion in *Lingan* v. *Henderson*, 1 Bland, 261, the chancellor announced the rule to be that, " where the defence made by one defendant goes to the whole cause of complaint, and the plaintiff fails to establish his case in opposition to such defence, he cannot be relieved in any way whatever, although his claim should be confessed by the other defendants." To the same effect is *Clason* v. *Morris*, 10 Johns. 524, in which it is announced that where there are two defendants having a joint interest, and one appears and answers, and disproves the plaintiff's case, the plaintiff cannot have a decree against those who made default. The case of *Field* v. *Holland*, 6 Cranch, 8, supports the view that the answer of one defendant is evidence against the plaintiff, and enures to the benefit of co-defendants.

The settled doctrine of this court is, that when one of sev-

eral defendants makes default, followed by a *pro confesso*, and others defend, and it appears from their defence that, on the whole case, the complainant is not entitled to succeed, he will not be allowed to do so even against him who made default. *Minor* v. *Stewart*, 2 How. 912 ; *Hargrove et al.* v. *Martin*, 6 Smed. & M. 61, recently followed by us.

The principle supporting this rule is that the complainant must show himself entitled to relief or he shall not have it, and it matters not which of those whom he calls on to defend may show that his complaint is groundless.

In this case the husband answered the bill fully, responding to it and denying its allegation of fraud in his conveyance to his brother, and stated in explanation the facts of the transaction, which, if true, made it a proper one. The wife, reposing on the full answer of her husband, simply denied personal knowledge of the transaction between her husband and his brother. The complainant did not except to her answer for incompleteness on this point, as he might have done, and, disregarding the real point of attack, directed all his efforts against another part of the defence. In this he was successful, but left unassailed the most formidable barrier to the accomplishment of his aim, viz. : the valid transfer by his debtor to his brother.

Though this is set up by the answer of the husband alone, so long as it is not overthrown it shows that the complainant is not entitled to the decree he sought and obtained in the court below.

If the real object of the suit is to reach assets of J. M. Salmon, hid away in improvements of his wife's land or paid to D. D. Salmon for her title, the litigation should be shaped to that end.

The decree is reversed, and, believing that attention was not directed in the court below to what we have declared to be the real ground of controversy, we decline to render here the decree which the record shows should have been made in the court below, and remand the cause for such proceedings in the Chancery Court as the chancellor may direct.