HANOVER NATIONAL BANK ET AL. *v.* E. B. KLEIN·ET AL.

1. PARTNERSHIP. *Firm assets. Rights of creditors.*
   The right of creditors to have firm assets appropriated first to firm debts is a derivative one, and if partners cannot, for any cause, enforce such right as between themselves, creditors cannot. *Schmidlapp* v. *Currie,* 55 Miss. 597, cited.

2. SAME. *Conversion of assets by one partner. Effect as to creditors. Case in judgment.*
   J. paid the premiums on a policy of insurance on his life for the benefit of his wife with the consent of his partner, G. J. died, and the firm of J. & G. having failed in business, creditors of the firm filed a bill to subject the proceeds of the policy over and above exemptions, or the amount paid out of the firm's assets for premiums, to the payment of debts of the firm. *Held,* that the assets having been converted by J. with the consent of G., the equities of the partners in respect thereto were extinguished, and the creditors having no lien upon such assets have no rights against them, it not being shown that there was any fraud in the transaction, or that the firm was insolvent at the time thereof.

3. CHANCERY PRACTICE. *Answer of one defendant as evidence against another.*
   It is a general rule of practice that the answer of one defendant is not evidence against a co-defendant, unless adopted by the latter.

4. PARTNERSHIP. *Firm assets. Payment of individual debts. Rights of creditors.*
   A member of an insolvent firm may, with the consent of his partner, use the assets of such firm to pay premiums on a policy of insurance on his life for the benefit of his wife, to whom he is indebted, and partnership creditors, having no lien upon the assets of the firm, have no right to pursue the money paid for such premiums unless they can show fraud in the transaction.

APPEAL from the Chancery Court of Warren County.

HON. WARREN COWAN, Chancellor.

The Hanover National Bank and Andrew Kelly filed this bill on March 10, 1884, against Mrs. E. B. Klein and Geo. M. Klein.

In 1868 there were taken out on the life of Jno. A. Klein two policies of insurance, and in 1875 a third policy, for the benefit of his wife, Mrs. E. B. Klein. J. A. Klein and Geo. M. Klein had been carrying on a banking business under the name of "The Mississippi Valley Bank." On November 21, 1883, the bank

suspended payment, greatly insolvent, owing the Hanover National Bank a debt contracted by a loan from it between April and July, 1883, and owing Kelly an account for money deposited at various dates between June, 1876, and January, 1883. It does not appear from the proof when the bank first became insolvent, nor when Jno. A. Klein became insolvent. The opinion sets out the effect of the pleadings on this point.

During all this time Jno. A. Klein was the agent of his wife, collecting the rents from her large estate, receiving the proceeds from the sale of her property, and investing her assets for her benefit without consulting her. He took out the policies of insurance in question for her, and paid the annual premiums thereon by checking on his individual account with the Mississippi Valley Bank, with the knowledge and consent of Geo. M. Klein, his copartner. When the bank failed Jno. A. Klein had overdrawn his account upward of ninety thousand dollars. Mrs. E. B. Klein had no individual account with the bank until 1880, all the money received by Jno. A. Klein, as agent of his wife, being placed to his credit. From 1876 to 1883 he collected large sums due to her, so that on a statement of account between them, including the premiums paid on these policies, he was still indebted to her in a large amount when Jno. A. Klein died, in November, 1883.

The bill prayed that the investment of the partnership funds, or individual funds, in the policies of insurance on the life of Jno. A. Klein be declared fraudulent as to the creditors of the partnership, and that the policies of insurance, or the proceeds thereof, be subjected to the payment of complainants' debts. The value of the policies was considerably above ten thousand dollars. The bill further prayed that if the full proceeds be not subject to the payment of complainant's debts, that so much thereof as is equal to the amount of premiums paid by Jno. A. Klein on the policies be so subjected.

The Chancellor found for the defendants, and the complainants appealed.

*Calhoon & Green,* for the appellants.

1. So long as the firm is solvent no questions could arise as to

the rights of creditors, because the trust fund is ample to pay debts. If a member of a firm appropriates to his own use assets of the firm with the consent of his copartners, if the firm is solvent and creditors' rights are not involved, the transaction is valid, because all persons interested consent. But if the rights of creditors are involved, then no consent to such appropriation is valid, because it violates the rights of others not bound by such consent, and who have trusted the firm on the faith of the capital being a trust fund for the payment of firm debts. If a partner withdraws money from the firm not profits, he thereby reduces the capital, which is a trust for creditors. By the agreement of copartnership this capital was devoted to *firm purposes*, and those who would become firm creditors, and upon this agreement *firm creditors*, have trusted and were expected and induced to trust, and it would be a fraud on them to withdraw it unless sufficient was left to pay their debts. The rights of the firm and its creditors depend upon the status at the time of winding up the firm.

If the rights of firm creditors were measured by the solvency or insolvency of the firm, then *rights* would arise according to the *quantum* of interest of the partners. If any surplus would remain for the partners after payment of debts, then no *rights exist;* if no surplus, then *rights exist.* Is it not plain that this is shallow reasoning? The true solution is, that the rights always exist, but as no injury results to the creditor if the firm is solvent, he cannot complain; if insolvent, then he is injured and can complain. Though fraud may exist, only those injured can complain.

If the partners, by each other's consent, appropriated all the assets to their private purposes and left the firm insolvent, would it be said that the firm or its creditors, thus despoiled, would not have the right to avoid such appropriation and bring the funds back for firm creditors? To demonstrate that such right was not derivative, in such case the gravamen of the complaint would be that the *firm* had been injured, and through it its creditors.

We contend that in such case the *thing* has its rights, and its creditors have the right to invoke the rights of their debtor, and to collect such assets for their benefit?   *   *   *   We respectfully

suggest that the doctrines of *Schmidlapp* v. *Currie*, 55 Miss. 599, in one aspect of them are incorrect. In the case at bar the firm is insolvent, and hence the Schmidlapp case does not apply. * * * That the following language of *Schmidlapp* v. *Currie*, 55 Miss. 600, 601, "The principle itself springs alone out of the obligation to do justice between parties," is incorrect, is demonstrated by the cases in this State holding that an individual creditor, to enforce his execution, may seize *all* the partnership assets, and that the sheriff thereby becomes tenant in common with the other partners, and that if the sheriff sells, he sells the *legal* interest of the partner, which is his proportionate share in surplus after settling partnership accounts. *Saunders* v. *Young*, 2 George 111; *Atwood* v. *Meredith*, 8 George 635; *Bowman* v. *O'Reilly*, 2 George 261.

2. But if we have no right to come in asserting the rights of the firm against the acts of its partners, we have a lien by statute on the firm assets, and can subject assets of the firm fraudulently conveyed.

The rights of creditors are determined by the status of the accounting at the winding up of the firm. *Page* v. *Thomas*, 43 Ohio St. 38; *Tyler* v. *Wheelen*, MS. Op. Bk. M. 36.

Every time Klein paid an insurance premium with the firm money he committed a fraud on the *partnership*, not one waivable by the partners, but made a diversion of firm assets which the assignees of the firm or its creditors with a lien can reach. *Tufts* v. *Thompson*, 4 West. Rep., No. 8, p. 917. The voluntary settlement upon the wife was a fraud on the firm. The firm had its debts to pay; it must be just before it is generous. It could not afford to be paying one thousand seven hundred dollars *per annum* to raise up and maintain a voluntary settlement by the husband on the wife.

If a creditor is debarred from *accepting*, it is because the assets of the firm would be applied contrary to a trust. *A fortiori* would the firm be precluded from applying them to purchase of voluntary settlements.

Trust funds in *choses in action* can be followed, if they are not negotiable. *Isom* v. *First National Bank*, 52 Miss. 902; 55 Miss. 314.

In 16 Nat. Bank. Reg. Rep. 181, after an examination of the cases, it was held that if the partner in an insolvent firm appropriates partnership assets to purchase a homestead it is a *trust* for firm creditors.

It is the right of the firm to pursue and retake stock of firm from partner if identified.   Collyer on Part., § 126.

"We will not be understood to assent to the proposition that an insurance association can, by any regulation it may adopt, enable insolvent debtors to invest their means in the procurement of benefits to others to be held beyond the reach of creditors." *Bishop* v. *Curphey*, 60 Miss. 27.

In *Case* v. *Beauregard*, 101 U. S. 688, it was held on the circuit by Judge Bradley and not denied, but rather affirmed on appeal, that bank assets misappropriated by the officers of a bank could be traced into property and the property held as trust.   See also 114 U. S. 377.

We submit that the explanation of all the seeming floundering in the cases on this doctrine of the rights of partnership creditors in partnership assets proceeds from confusion of the doctrine ·of *jurisdiction in equity* with the rights themselves.   See 99 U. S. 119 ; 101 U. S. 688 ; S. C. and confusion of, 106 U..S. 648.

All cases concur that equity, *if it gets jurisdiction*, will devote the partnership assets to partnership debts.   Law has no jurisdiction at all.   *Loeb* v. *Morton*, 63 Miss.

This settled, the question occurs, how can equity acquire jurisdiction to thus devote the assets?

Jurisdiction in equity exists only at the instance of the party who has a *lien on or estate in the thing.*   Though there be a fraud ; though there be a trust ; though there exist any of the matters cognizable *alone* in equity, it does not follow that a party can complain.   The right of complainant must exist by some interest in the thing, either by contract or by lien.   *Case* v. *Beauregard*, 101 U. S. 688.

The *jurisdiction* not being attainable without a lien, the numerous cases denying relief because no lien exists are based upon *want of jurisdiction.*

These cases do not dispute the settled doctrine of administration in equity, but deny the right of the party to invoke it.

Some courts striving to maintain the equity have invented the theory of *derivative rights of creditors* through partners in cases of insolvency, but this as to creditors *without lien.*

But if the creditor has a *lien* he has a *status* to invoke the jurisdiction in equity, and having jurisdiction, the cases all concur that equity will appropriate partnership assets to firm debts.

If the element of jurisdiction is separated from the rights of creditors, the solution of the difficulty becomes cleared.

With this *key* the whole complexity can be unlocked.

If forced to show a lien, we have *the lien,* and the administration in equity can be forced at our instance.

That in *insolvent partnerships* the creditors have an equitable lien on the assets is declared by *Tillinghast* v. *Champlin,* 4 R. I. 173, and this seems to be conceded by *Truman* v. *Stewart,* 41 Miss., and that the rule announced in *Schmidlapp Case, supra,* does not apply to insolvent partnerships, is there broadly stated.

Hence, as conceded, a different rule applies to insolvent partnerships. A receiver or assignee of a firm can assail fraudulent conveyances by the firm. He can follow the trust estate or partnership estate into whatever form it may have been fraudulently converted. But by what criterion is the fraud to be judged? If by the rights of the members of the firm, then the joint act of all partners must be unassailable by him. It must be from the standpoint of, and as representing, that entity, the partnership. Whatever is a fraud upon its rights the receiver may set aside. He represents the firm and the creditors, but not the members of the firm. If he represented the members he would be bound by their fraudulent acts. *Blake* v. *Blake,* 53 Miss. 182.

It is clear, then, that there are rights of the firm and its creditors as independent of and not derived through the members of the firm. It is this right which has been sought to be enforced here.

3. The *bona fides* of the transaction is made an essential element to its validity by the *Schmidlapp Case, supra.* These policies are equitable assets of the firm as to creditors and liable as such—

equitable assets of the insolvent firm in the hands of the wife—a volunteer—of one of the partners.      *      *      *

4. A voluntary conveyance is *prima facie* fraudulent, and the burden of proof to show its validity is on the party claiming through it. 50 Miss. 629 ; 51 Miss. 158 ; 59 Miss. 524–5. We prove the firm-funds paid the premiums. If Mrs. Klein supplied the funds to that bank account to make these payments she should show it.    *      *      *      *      *      *

And the burden of proof is on the voluntary donee to prove that the settlement was proper and not prejudicial to creditors. George's Dig. 321, Tit. Voluntary Conveyances, 2. Hence, the burden of proof was on Mrs. Klein to show the firm solvent. *Prima facie,* the payments were fraudulent.

*Mr. Green,* of counsel for the appellants, argued the case orally.

*Shelton & Crutcher,* for the appellees.

1. The theory upon which creditors can follow the money of an insolvent debtor invested for another is that the money so invested was either a gift or that the investment was a fraud on creditors by reason of actual fraudulent intent on the part of the debtor, participated in by the beneficiary.

In this case there can be no pretense of a gift.

2. Nor can it be said there was any fraud on creditors in the transaction. If J. A. Klein had used Mrs. Klein's money in his hands he was her debtor to the amount so used, and the payment of such premiums could only be treated as a payment of that debt *pro tanto* which he had the right to do, even to the full amount of the debt, having the right under the law to prefer one creditor over another.

3. But it is said that it was a fraud on the creditors of the bank for Klein to use the assets to pay his private debt to his wife. That when the exchange was furnished the balance on the books of the bank was against Klein, so that he had no funds there.

Let it be supposed that Klein had used his wife's funds, so that he did not have the money to keep up the investment he had made for her as her agent and which she expected him to keep up, and to meet this deficiency he borrowed from the bank (for the cashing

of his draft when he had no funds was but a loan), could this transaction in any way connect Mrs. Klein with the bank?

Did this create any demand on the part of the bank against her?

4. But let it be admitted that Klein, with the consent of his partner, took a part of the assets of the bank to pay a private debt with, does that create any liability on the part of his creditor to account to the bank for such assets? This court, in *Schmidlapp* v. *Currie*, 55 Miss. 597, have said that it did not. So, even upon that hypothesis, the decision is right.

5. But we insist that the facts do not make the case even as favorable as that for appellant, but a transaction in which Klein borrows money from the bank to carry out an investment made by him for his principal, either having used her money which he took in his hands or retaining her money in his pocket.

*Birchett & Hilland,* on the same side.

1. Appellants are not entitled to *any recovery.* Appellants' counsel have devoted themselves to the preparation of a new treatise on the law of partnership, in order to try to get this court to overrule *Schmidlapp* v. *Currie,* 55 Miss. 600. They fiercely combat the propositions laid down in that case, that partnership creditors have no lien on the partnership assets, and that one partner can, with the consent of his copartner, use the firm assets to pay his private debt.

While we cannot see that the opposite propositions would in the least affect the appellee in this case, yet we must say that the propositions laid down in *Schmidlapp* v. *Currie, supra,* are but the announcement of the law as it has always existed, and especially in this State. *Freeman* v. *Stewart,* 41 Miss. 139; *Roach* v. *Brannon,* 57 Miss. 490; cases cited in *Schmidlapp* v. *Currie, supra;* Pars. on Part. (marg. p.) 502, and notes; *Case* v. *Beauregard,* 99 U. S. 119; *Fitzpatrick* v. *Flannagan,* 106 U. S. 648; *Hartley* v. *White,* 12 Cent. Law Jour. 15.

2. The creditor must work out his equity through the equity of the partners, and G. M. Klein having consented to the payment of these premiums by checks on the bank, he has no equity for the

creditor to work through. *Fitzpatrick* v. *Flannagan,* 106 U. S. 648.

If the theory now advanced by appellants were correct, then the court must take charge of the sums derived from these policies, and distribute them *pro rata* among all the creditors of the Mississippi Valley Bank, for all have an equal lien and equality is equity.

3. Failing in the above, appellants then claim an interest in these funds as individual creditors of Jno. A. Klein.

It being admitted by appellants that, during the whole course of these policies, Jno. A. Klein was indebted to appellee in much larger sums than the annual premiums, he had a right, even though insolvent, to pay her by using his own assets for her benefit. Wait on Fraudulent Con., § 299 ; *Savage* v. *Dowd,* 54 Miss. 732 ; *Eldridge* v. *Phillipson,* 58 Miss, 278 ; *Surget* v. *Boyd,* 57 Miss. 485 ; *Kaufman* v. *Whitney,* 50 Miss. 103. See especially this last case.

As *her agent* he paid the annual premiums, taking the receipts in *her name.* When paying the premiums, he, as her agent, had large sums of her money in his hands, or deposited to his credit in the bank, and checked against the sums so deposited.

He did not use partnership assets for such payments, nor did he use his own money. He put her money into his own account in the bank, and he checked her money out of *his* account, and paid her obligations for her. When a principal directs his agent to purchase property for him with the principal's money, which is in the agent's hands, and the agent does purchase the property for the principal, and pays for it, it is not necessary, as against the creditors of the agent, for the principal to prove what particular bills were used by the agent in making the purchase. It is sufficient that the agent had the proper amount of the principal's money in his hands for the purpose.

*J. D. Gilland & A. B. Pittman,* for the appellees, argued the case orally.

ARNOLD, J., delivered the opinion of the court.

It is but the reiteration of well-settled principles, by no means peculiar to Mississippi, to affirm that the right of copartnership

creditors to have assets of the firm applied first to the payment of firm debts is a rule of administration adopted and exercised only by courts of equity when they are called upon to administer the affairs of a partnership, and that the equity of firm creditors in this behalf is a derivative one, growing out of the right of the partners as between themselves to do the same thing, and that if the partners for any cause could not enforce such right as between themselves, the creditors of the firm cannot do so. *Schmidlapp* v. *Currie,* 55 Miss. 597; *Loeb* v. *Morton,* 63 Ib. 280; *Case* v. *Beauregard,* 99 U. S. 119; *Fitzpatrick* v. *Flannagan,* 106 Ib. 648.

In this view of the law, the decree below is readily affirmed. Appellants had no lien on the funds of the firm sought to be reached by the bill, and these funds had been converted by John A. Klein to his own use, with the knowledge and consent of his partner, before the bill was filed. These funds, therefore, did not then belong to the partnership, and neither of the partners could at that time have insisted that they should be applied to the satisfaction of firm debts. The equities of the partners as to the particular funds had been extinguished by their joint act, and consequently the derivative equities of creditors were at an end. There was nothing upon which the equities of creditors could then operate, and no case for the application of the rule invoked, unless the disposition of the funds was rendered invalid as to creditors by the alleged insolvency of the firm or the fraud of the parties.

There is no testimony as to the insolvency of John A. Klein or the firm until the failure in November, 1883. It is true that the insolvency of both prior to that time is alleged in the bill upon information and belief, but this is denied on information and belief in the answer of Mrs. Klein, and appellants were thereby put upon proof of the allegation. Whatever may be the value of such answer as evidence, it at least required proof by appellants. 1 Dan. Ch. Pl. and Pra. 844, note 7; 846, note 1; *Buttrick* v. *Halden,* 13 Met. 355; *Dugan* v. *Gittings,* 3 Gill. 138; *Drury* v. *Conner,* 6 Har. & J. 288; *Watson* v. *Palmer,* 5 Ark. 501; *Lawrence* v. *Lawrence,* 21 N. J. Eq. 317.

If it be said that the matter of the insolvency of the firm may

fairly be presumed, without a charge to that effect, to have been in the personal knowledge of George M. Klein, who adopted the answer of Mrs. Klein, and that the insolvency, by such answer, was admitted by him, the obvious reply is, that his answer is not evidence against his co-defendant. She had not adopted or referred in any manner to his answer as being correct, nor was she so connected with him as to be bound by his confessions, admissions, or declarations, and the general rule therefore prevailed that the answer of one defendant is not evidence against another. 1 Dan. Ch. Pl. and Pra. 841, note 7; *Hardesty* v. *Jones*, 10 Gill. & J. 404; *Blakeney* v. *Ferguson*, 14 Ark. 640; *Christie* v. *Bishop*, 1 Barb. Ch. 105; *Salmon* v. *Smith*, 58 Miss. 399.

But the insolvency of John A. Klein, or the firm, or both, if shown, would not, on the facts of record, change the rights of the parties. An individual debtor, whether solvent or insolvent, may unquestionably, under the laws of the State, make preference among his creditors, or pay one or more, to the exclusion of the rest, if it is done in good faith, and without the reservation of any benefit to himself, or make a *bona fide* sale of his property without violating the legal rights of creditors, and a partnership or the members thereof, whether solvent or insolvent, may do the same. The law imposes no restrictions on the power of a partnership or its members as to the acquisition or disposition of property which are not common to other persons. *Schmidlapp* v. *Currie*, 55 Miss. 597; *Sigler* v. *Knox Co. Bank*, 8 Ohio 511; *Case* v. *Beauregard*, 99 U. S. 119; *Roach* v. *Brannon*, 57 Miss. 490.

The application of the funds of the partnership by John A. Klein, with the consent of his partner, to the payment of premiums on insurance for the benefit of his wife, to whom, it is admitted, he was largely indebted, was *prima facie* valid, and it devolved upon appellants to show that it was fraudulent. *Kimball* v. *Thompson*, 13 Met. 283; *Case* v. *Beauregard*, 99 U. S. 119; *Parkhurst* v. *McGraw*, 2 Cush. 134. They failed to do this, and there was no cause for relief.

*Affirmed.*