ELLISON & SON *v.* LUCAS & McDUFFIE *et al.*

1. Two members composing a partnership may unite in selling the entire assets thereof in payment of debts due individually by such members, and the sale, if made in good faith and without fraud, will be valid against creditors of the firm, notwithstanding the insolvency of the partnership, provided the transaction is not, as to any one of the partners, obnoxious to the statute against voluntary conveyances by insolvent debtors. If the value of one partner's share in the partnership property considerably exceeds in amount his individual debt settled by the sale, it amounts in law to a donation by him of such excess to his partner.

2. Where it appeared that two partners composing a firm conveyed all the property of the firm to a third person in satisfaction of their individual debts, the consideration being recited as a given sum of money, and it being admitted that the purchaser paid full value for the property, these facts are *prima facie* evidence that the consideration named is the actual value of the property, and a verdict which, in effect, finds to the contrary should be set aside.

May 8, 1891.

Partnership. Sales. Debtor and creditor. Before Judge HUTCHINS. Clarke superior court. October term, 1890.

Ellison & Sons, creditors of the firm of Lucas & McDuffie, sued out an attachment alleging that Lucas & McDuffie had transferred their property without consideration to Julius Cohen. Subsequently, and in aid of the attachment, Ellison & Sons filed a petition in

equity in behalf of themselves and the other creditors of the firm, alleging that Lucas & McDuffie had assigned and transferred all their firm assets to Cohen in payment of two individual debts owed by the members of the firm of Lucas & McDuffie, that Cohen had taken the same with knowledge of their insolvency, and that this constituted a legal fraud; and praying that the sale be cancelled and the assets brought in for the payment of the firm creditors. The defendants answered, denying that they were guilty of any fraud, and asserting that they had the legal right to make the sale. Other creditors were made parties; and the jury found for plaintiffs the amount of their debts against Lucas & McDuffie, but found in favor of Cohen, sustaining the sale of the firm assets to him. Plaintiffs moved for a new trial on the grounds that the verdict as to Cohen was contrary to law and evidence, which motion the court overruled.

The facts were as follows : Lucas and Dearing formed a partnership, each contributing $2,500 to the capital. Lucas bought of Cohen $1,600 worth of goods, which went in as a part of his contribution to the capital, Lucas giving Cohen his note for the $1,600. Subsequently McDuffie bought out Dearing's interest in the firm. McDuffie borrowed $2,500 from Mrs. Reese with which to pay Dearing for his interest, and gave Mrs. Reese a mortgage on his (McDuffie's) interest in the firm to secure her, and Lucas gave Cohen a mortgage on his interest to secure him. Afterwards McDuffie advanced $1,500 to the firm in paying its bills. The firm of Lucas & McDuffie and each member became insolvent. On the night of December 4, 1889, Lucas & McDuffie conveyed by bill of sale all their firm assets to Cohen. The consideration of $4,331.66 expressed in the bill of sale consisted of Lucas' debt of $1,600 and interest to Cohen, and Cohen's agreement to pay Mc-

Duffie's debt of $2,625 and interest to Mrs. Reese; Cohen, in pursuance of the agreement, giving Mrs. Reese his note in place of McDuffie's note. The trade was made between McDuffie and Cohen; and the bill of sale being carried to Lucas after he had retired at night, he signed it without seeing Cohen. In pursuance of the bill of sale Cohen took possession of all the assets of the firm. Cohen was acting in good faith in the effort to collect his debt out of Lucas, but knew the firm was insolvent and that there were firm creditors who would get nothing in consequence of the agreement. The whole transaction on the parts of Cohen, Lucas, McDuffie and Mrs. Reese was in actual good faith and without intention on the part of any of them to delay or defraud any one, but for the purpose of paying valid and subsisting debts as stated, due Cohen and Mrs. Reese. Full value was paid by Cohen, as stated. The claims of plaintiffs aggregate $1,837 for goods sold to Lucas & McDuffie, and are unpaid.

BARROW & THOMAS, for plaintiffs.

T. W. REED, T. W. RUCKER, A. J. COBB and LUMPKIN & BURNETT, for defendants.

LUMPKIN, Justice.

1. It was held by this court in the case of *Veal* v. *Veal et al.*, 86 *Ga.* 130, 12 S. E. Rep. 297, that a mortgage given by a partnership on partnership property to secure a debt due by one of the partners was valid against creditors of the firm, and that this was especially true when the debt due by the individual member had, by consent of the partners, been made a debt of the firm. This doctrine, irrespective of the qualification as to making the debt that of the firm, is supported by Jones on Chattel Mortgages, §44, there cited. In *Veal's* case, the question as to how the solvency or insolvency of the partnership would affect the transaction was not made or considered. Our code, §1953,

v 87-15

gives every debtor the right to prefer one creditor to another, and to that end he may give liens or sell property in payment of the debt. No distinction is made as to the kind of creditors who may be preferred or as to the kind of property which may be used for this purpose. In this case it appears that the transfer of the partnership property to Cohen was signed by Lucas and McDuffie as a firm, and by each of the members individually. We think, under the section of the code cited, and under the law generally, each of these members had the right, with the consent of his partner, to sell his share in the firm assets in payment of his individual indebtedness. As stated in the section above cited from Jones on Chattel Mortgages: " The rule preferring partnership property for the payment of partnership debts is for the benefit of the partners, and they may wave it. . . The partners, while the partnership property is still under their control, have power to appropriate it to secure their individual debts. The mere preference of individual debts . . over partnership debts is not such a fraud upon partnership creditors that a court of equity will set it aside. The partnership creditors have no lien on the property of the partnership, if the partners themselves have none." See, also, Story on Partnership, §358.

It must not be overlooked that under our own statute, the right to prefer creditors is secured as well to insolvent as to solvent debtors, provided, of course, they exercise this right in good faith and without fraud on the rights of others. The doctrine is laid down in Bates on Partnership that it is not uncommon for a partnership to use the right of absolute disposition of its property by employing firm funds to pay the separate debt of a single partner; and it is said, in effect, that this right is unlimited except as controlled by statutes against voluntary conveyances in fraud of cred-

itors and the similar provisions of the bankrupt law. Of course, where this right is exercised for fraudulent purposes, the transaction will be void. Bates on Partnership, §§565, 566. In Marks *et al. v.* Hill *et al.,* 15 Grat. 400, it was held that: ." Partnership effects may be applied, by the concurrence of the partners, to pay an individual debt of one of them, *if the other receives a sufficient consideration therefor,* though they may be unable to pay all their partnership debts." In Woodmasie *v.* Holcomb, 34 Kan. 35, ɪt was held that while the partnership remains in existence, and in a solvent condition, it may, with the consent of all the partners, transfer firm property in payment of the individual debt of one of its members; and in the opinion, on page 38, Johnson, J., says: " The decisions of the courts have gone further than this, and although not unanimous, the weight of authority seems to be that mere insolvency, where no actual fraud intervenes, will not deprive the partners of their legal control over the property and of the right to dispose of the same as they may choose; and where the separate creditor purchases ·from the firm ɪn good faith, *and the individual indebtedness is a fair price for the property purchased,* such purchase cannot of itself be held fraudulent as against the general creditors of the firm." The following cases are there cited in support of this assertion: " Sigler & Richey *v.* Knox County Bank, 8 Ohio St. 511; Schmidlapp & Bros. *v.* Currie & Co., 55 Miss. 597; Case *v.* Beauregard, 99 U. S. 119; National Bank of the Metropolis *v.* Sprague, 20 N. J. Eq. 13; Wilcox *v.* Kellogg, 11 Ohio, 394; Gwin *v.* Selby, 5 Ohio St. 96; Allen *v.* Center Valley Co., 21 Conn. 130; Rice *v.* Barnard, 20 Vt. 479; Haben *v.* Harshaw, 49 Wis. 379; White *v.* Parish, 20 Tex. 688; Schaeffer *v.* Fithian, 17 Ind. 463; McDonald *v.* Beach, 2 Blackf. 55; Ruffin, *ex parte,* 6 Ves. 119; Whitton *v.* Smɪth, 1 Freeman's Ch.

231; Freeman *v.* Stewart, 41 Miss. 138; Potts *v.* Blackwell, 4 Jones (N. C.) Eq. 58." See, also, the notes to the case of Schmidlapp & Bros. *v.* Currie & Co. in 30 Am. Rep. 533, in which reference to many cases bearing on this subject will be found, and among them that of Sigler *v.* Knox Co. Bank, 8 Ohio St. 511, above cited, in which it was held that where a creditor of a firm and one of its members, with the assent of all the partners, bought of the firm in good faith, and at a fair price, goods to the amount of such joint and separate indebtedness, though with knowledge that the firm was insolvent in the proper sense of the term, such purchase was not fraudulent as against other creditors of the partnership. As will be seen above, in the quotation from the opinion of Johnson, J., in the case cited from 34th Kansas, he remarks that the decisions are not unanimous in holding "that mere insolvency, where no actual fraud intervenes, will not deprive the partners of their legal control over the property," etc. Accordingly we have found, in support of the contrary doctrine, the following cases: Wilson *v.* Robertson, 21 N. Y. 591; Menagh *v.* Whitwell, 52 N. Y. 146; Clements *v.* Jesup, 36 N. J. Eq. 572; Arnold *v.* Hagerman, 45 N. J. Eq. 186; and Phelps *v.* McNeely, 66 Mo. 554. See, also, Davies *v.* Atkinson, 124 Ill. 474, and Story's Eq. Jur. §1253. Nevertheless we are of the opinion that the true law of the case is as stated in the language taken from page 38 of 34th Kansas, and that the current of authority is in that direction. Indeed, this doctrine was recognized by the learned counsel who argued this case for the plaintiff in error, who conceded that if the value of Lucas' share in the partnership assets was not materially greater than the amount of his individual indebtedness to Cohen, the transaction would be legal and valid. He rested his case upon the law that a voluntary deed or conveyance by an insolvent debtor is void as to his creditors, and contended

that under the agreed statement of facts, it appeared that Lucas' half of the partnership assets, which he transferred to Cohen, was actually worth about $500.00 more than the amount Lucas owed Cohen, and consequently, that Lucas had donated to his partner, McDuffie, *without any valuable consideration therefor*, about $500.00 worth of the property. We will now consider whether this position has merit in it.

2. The assignment of Lucas & McDuffie to Cohen recites that it is made for and in consideration of the sum of $4,331⅔, and in the agreed statement of facts it appears that full value was paid by Cohen for the property. Lucas' debt to Cohen was $1,600.00 and some interest thereon. McDuffie's debt to Mrs. Reese, assumed by Cohen, was $2,625.00 and interest. These sums added together make the consideration expressed in the assignment. The facts stated amount to *prima facie* proof that this consideration was the actual value of the property sold to Cohen. From no other source in the record is any light thrown upon this question, except the statement that all these parties acted in perfect honesty and without fraud. These things being true, the presumption arises that the goods were bought at a fair price. To assume otherwise, in the light of the facts, would be mere conjecture. Moreover, if Cohen actually paid more for the goods than they were worth, it is quite certain he would have taken pains to make this exceedingly important fact appear. Taking the case, therefore, as it stands, it seems that Lucas parted with his half of the firm assets for a consideration materially less than its actual value; and to the extent of the difference between such value and the amount of the debt he owed Cohen, this action on his part amounted in law to a donation of so much of his property to his partner, McDuffie, and was void as to creditors.

The entire record of the case was not sent up, and

we are therefore unable to ascertain what the pleadings contain; but for the reasons stated above, we think the verdict was wrong, and that the court erred in refusing a new trial.        *Judgment reversed.*