Excelsior Mill Co. vs. Hanover.

Excelsior Mill Company, Respondent, vs. Hanover, Garnishee, Appellant.

*February 3 — February 21, 1899.*

*Garnishment: Partnership assets: Fraudulent conveyances.*

1. The mortgagee in a chattel mortgage of firm property given to secure a *bona fide* debt owing to him by the partners individually, is not subject to garnishment by the firm creditors after he has sold the property and applied the proceeds upon the debt, even if the mortgage was fraudulent as to such creditors.
2. Marshall, J., is of the opinion that a conveyance of firm assets by the members of an insolvent partnership, to pay the individual indebtedness of one of its members, and without any other purpose, is not void as to partnership creditors.

Appeal from a judgment of the circuit court for Lincoln county: Chas. V. Bardeen, Circuit Judge. *Reversed.*

On December 18, 1896, Frederick A. and Clarence G. Hanover, copartners, being insolvent and without expectation of working out of said insolvency, mortgaged their entire partnership stock in trade to the garnishee defendant, *Henry D. Hanover,* to secure the note of Clarence G. Hanover to said *Henry D. Hanover,* the condition being that "said mortgagor shall pay to said mortgagee the sum of one thousand dollars, according to the terms of a certain promissory note executed by the said F. A. Hanover, June 14, 1895, to said *Henry D. Hanover,* payable one year after date, with interest at seven per cent. per annum, which said note was given as a renewal of a note of similar terms and in the same amount, executed and delivered between the same parties about a year prior thereto, and was given to secure a loan made to said Frederick A. Hanover and Clarence G. Hanover, and was used and invested by them in the business of the firm of F. A. Hanover & Son."

There is some evidence that in June, 1896, F. A. and

Clarence G., as a firm, assumed partnership liability for the debt evidenced by said note. The court, however, negatives such promise or assumption in his finding. The note evidenced a debt originally incurred by both partners in 1893, but not as a firm. At the time of making said mortgage the firm were indebted to the plaintiff in the sum of about $550 for merchandise purchased for partnership purposes. The garnishee, within a few days after the making of said mortgage, and before the commencement of this suit, foreclosed the same, and sold the stock of merchandise, realizing therefrom the sum of $1,003.28, which he indorsed upon his note. The plaintiff, having obtained judgment and issued execution, garnished *Henry D. Hanover* in aid thereof. The circuit court held the garnishee liable for the proceeds of the mortgaged property, and rendered judgment against him therefor, from which judgment the garnishee appeals.

For the appellant there was a brief by *Van Hecke & Smart*, and oral argument by *E. M. Smart*.

For the respondent there was a brief by *Curtis, Reid & Smith*, and oral argument by *A. H. Reid*. To the point that an insolvent partnership cannot mortgage its entire assets to secure a private debt of an individual partner large enough to absorb such assets, they cited *Cribb v. Morse*, 77 Wis. 322; *Willis v. Bremner*, 60 Wis. 622; Bates, Partnership, §§ 566, 829; *Whelan v. Shain*, 115 Cal. 326; *Clark v. Patterson*, 158 Mass. 388; *Cron v. Cron's Estate*, 56 Mich. 8; *Forsyth v. Woods*, 11 Wall. 484; *Keith v. Armstrong*, 65 Wis. 225; *Powers v. Large*, 69 Wis. 621; *Vernon v. Upson*, 60 Wis. 418; *Bulger v. Rosa*, 119 N. Y. 459; *Peyser v. Myers*, 135 N. Y. 599; *Wilson v. Robertson*, 21 N. Y. 587; *Menagh v. Whitwell*, 52 N. Y. 146; *Jackson Bank v. Durfey*, 72 Miss. 971, and cases cited; *Wiggins v. Blackshear*, 24 S. W. Rep. 918; *Bannister v. Miller*, 54 N. J. Eq. 121; *Hilliker v. Francisco*, 65 Mo. 598; *In re Gray's Estate*, 111 N. Y. 404; *Winner v. Kuehn*, 97 Wis. 394; *In re Weston*, 12 Met. 1; *Turner v. Jay-*

Excelsior Mill Co. vs. Hanover.

*cox,* 40 N. Y. 470; *Franklin S. R. Co. v. Henderson,* 86 Md. 452; *Boos v. Marion,* 129 N. Y. 536; *Bartlett v. Meyer–Schmidt . G. Co.* 45 S. W. Rep. 1063; *Erb v. West,* 19 So. Rep. 829.

DODGE, J.   There were vigorously argued in this case several important questions relating to the rights of the firm creditors against partnership assets when attempted to be applied to private debts of the partners, which, however, it is wholly unnecessary to consider.   Here, the partnership property had all been sold to *bona fide* purchasers for value before the garnishment, and the money proceeds thereof had, with consent of both partners, been applied in part payment of the *bona fide* private debt secured by the mortgage, and had been mingled with other moneys.

The cases of *Spitz v. Tripp,* 86 Wis. 25, 28; *Jones v. Kosing,* 92 Wis. 55; and *Salter v. Bank of Eau Claire,* 97 Wis. 84, have fully settled the rule for this court, that whether or not a transfer of property be fraudulent, if that property has been entirely disposed of, and the proceeds are not in any way held in trust for the debtor, but have been applied under his direction or to his debts, garnishment cannot be sustained against even the fraudulent transferee of such property.

In *Spitz v. Tripp, supra,* the court, speaking by CASSODAY, J., said: "Under this statute, Tripp cannot be held liable, as garnishee, for any property, moneys, credits, or effects belonging to the principal debtor, which had passed out of his possession or control more than three months prior to the service of the garnishee summons upon him.   Had Tripp been garnished by the plaintiffs at any time between July 26, 1892, and September 10, 1892, then the validity of the mortgage, and Tripp's right to hold possession of the goods, would have been involved, and might have been determined. *La Crosse Nat. Bank v. Wilson,* 74 Wis. 398; *Edwards v. Roepke,* 74 Wis. 575.   But, upon the facts of this case, it is

immaterial whether the mortgage was valid or invalid, or such possession lawful or unlawful, as against J. L. Tabor's other creditors, since none of them during that time proceeded against the property or Tripp as garnishee."

In *Jones v. Kosing, supra,* the court, speaking by MARSHALL, J., said: "Kosing having sold his interest in the property, and parted with possession and control of it, and applied the proceeds in the payment of Adolph Keller's debt to him, before service of the garnishee summons, he cannot be held as garnishee, whether the mortgage and bill of sale were valid or invalid, or his possession was lawful or unlawful, as against the other creditors of Adolph Keller."

The distinction between levying upon the property itself, and attempting to reach the proceeds after the property has been disposed of, is also pointed out in *Powers v. Large,* 69 Wis. 621, and *Coover's Appeal,* 29 Pa. St. 9.

Garnishment, while in many respects serving the purpose of a creditor's bill, is nevertheless limited by the statute. It reaches only property or effects belonging to the debtor in the hands of the garnishee, or indebtedness from the latter to the former, neither of which existed at the time of the garnishment in this case, and as a result the appellant could not be held liable on that process.

*By the Court.*— Judgment reversed, and cause remanded with directions to enter judgment in favor of the garnishee defendant.

BARDEEN, J., took no part.

MARSHALL, J. I concur in the opinion of the court so far as it goes, but think the question submitted to the circuit court on which the case turned there, and presented here with much learning and ability by counsel for the respective parties, deserves to be considered and decided. It is not satisfactory to counsel in a cause, or the court from which

the cause is removed to this forum for review, to have some new .question discovered and assigned as sufficient to rule the situation, leaving entirely out of view those questions upon which much labor has been expended. For a cause to be so disposed of, where the new discovery is really the only question involved, of course cannot be helped, but that is of extremely rare occurrence and is not the situation here. Where certain questions have been supposed to control a case till submitted on appeal, and they are in the case, it seems that they should be considered and decided, even if some other question be decided requiring the same result.

The learned trial court decided this case in accordance with an affirmative holding on the following question: Is. a conveyance of firm assets by the members of an insolvent partnership, to pay the individual indebtedness of one of its members, and without any other purpose, void as. to partnership creditors? That decision, it seems, is wrong,. and the judgment based on it necessarily wrong, though there have been so many observations in decisions of this court along the line which the learned trial court followed, that it is very easy to see how the judicial mind drifted into· a channel which resulted in holding that the use, by an insolvent firm, of any of its assets for any purpose other than to pay partnership debts, is fraudulent and void as to firm creditors.

In *Thayer v. Humphrey*, 91 Wis. 276, the rights of credit-· ors as to the property of an insolvent partnership were carefully considered and determined with such definiteness that it ought to settle the law for this state. The facts were that the firm of J. D. Putnam & Co., composed of J. D. Putnam and A. J. Goss, was hopelessly insolvent. In that situation, Putnam sold out his interest in the firm property to J. B. Goss, and the firm of J. B. Goss & Co. was formed to continue the business with the same assets, the new firm agreeing to pay the old firm debts out of such assets. J. B.

Goss was insolvent when this arrangement was made. The new firm conducted the business for a time, contracted some new debts and paid part of the old liabilities, when an assignment for the benefit of creditors was made. The creditors of the old firm claimed a preference over the new creditors, and whether they were entitled to such preference or not turned primarily on whether the old firm, being insolvent, could make a *bona fide* conversion of its property into that of the new firm, so as to cut off the equity of the old creditors to be first paid. After a very careful study of the subject, that question was unanimously answered in the affirmative. Though two opinions were filed, both were to the effect that if a member of an insolvent firm sell his interest therein to his copartner or a stranger, without intent to hinder, delay, or defraud partnership creditors, and without in any way retaining his equitable right to have the partnership debts paid out of the partnership assets, the dependent right of partnership creditors is thereby extinguished. The only division was in this: The court held that where the agreement in effect is that the partnership debts shall be paid out of the partnership assets, and the circumstances are such as to clearly show that all of the parties intended to devote such assets to that purpose, and there was evidently no other method in contemplation or other way to effect such payment, the court is warranted in holding that thereby the equity of the vendor partner is retained for that purpose. Justices PINNEY and NEWMAN concurred in the idea that the circumstances mentioned were not sufficient to preserve the equity of the vendor partner, hence not of the partnership creditors. All the members of the court approved the rule of *Ex parte Ruffin*, 6 Ves. 119, which, with few exceptions, prevails in this country and England and has for nearly a century. It was decided in 1801, and language there used by Lord ELDON, or its equivalent, has been repeated by most courts and textwriters since that time in stating the

law governing the subject.    It is to the effect that creditors
of a partnership, solvent or insolvent, have no lien on partner-
ship assets independent of the lien of the members of such
partnership; that each of such members has the equitable
right to have all firm creditors paid out of the partnership
assets before any part of it shall be otherwise used, but that
he may waive that right, and, by a *bona fide* sale of the
property without in any way retaining such equity, he does
waive it; that, acting *bona fide*, the members of a partner-
ship, solvent or insolvent, may use partnership property for
the payment of the individual debts of one of the partners,
or may divide the partnership property between themselves,
or sell the same to a stranger, or otherwise change the char-
acter of the assets so as to exclude partnership creditors
from any equitable right to be paid in preference to credit-
ors of the new owner; that the sole test of the right of the
members of a partnership to deal with the partnership prop-
erty, regardless of the interests of partnership creditors, is
that of *bona fides*, and not of insolvency of the firm; that in
such a situation a sale or use of the partnership property by
consent of all the members of the firm solely to satisfy, se-
cure, or pay the individual indebtedness of one of the firm,
is not voidable as a fraud upon partnership creditors.

It will be seen by a careful reading of *Thayer v. Hum-
phrey,* 91 Wis. 276, that the rule of *Ex parte Ruffin* was made
the text of the opinion of the court, as well as that of Mr.
Justice NEWMAN.    The latter opinion, after citing many au-
thorities, said: "Such sale of a partner's interest in firm
property is presumed to be valid."    "The authorities are
nearly uniform.    Only a few cases are out of line."    The
court, in the majority opinion, said: "The propositions of
law are too well established by the great weight of author-
ity to be questioned by this court,— that partnership cred-
itors have no lien on partnership assets independent of the
equity of the partners; that so long as the equity of the in-

dividual members of the partnership exists the creditors have the equitable right to compel its enforcement; that if one partner sell his interest in the partnership assets, *bona fide,* to his copartner or a stranger, without in any way retaining his equity to have the partnership creditors paid out of it, the joint property is thereby converted into the individual property of the purchaser."

The same rule is stated as elementary in 2 Lindley, Partnership, 698, as follows: "The creditors of the firm have no lien on its property which can prevent the partners from, *bona fide,* changing its character into the separate estate of one of them. Even if the liabilities of the partnership exceed its assets at the time the agreement is made, still, if the partners act *bona fide,* and not with a view to defraud their creditors, the ownership in that which before the agreement was partnership property will have changed, and the joint creditors of the firm cannot insist on its distribution as joint estate." That is the doctrine of the English courts, the supreme court of the United States, and of most of the states. *Ex parte Ruffin,* 6 Ves. 119; *Ex parte Williams,* 11 Ves. 6; *Stuart v. Ferguson,* Hayes, 472; *Ex parte Walker,* 4 De Gex, F. & J. 509; *Ex parte Peake,* 1 Madd. 346; *Ex parte Clarkson,* 4 Deac. & C. 66; 1 Lindley, Partnership, 334, 335; Story, Partnership, §§ 307, 358, 360; Parsons, Partnership, §§ 178, 246, 248, 394; Collyer, Partnership (Perkins's ed.), §§ 894, 904, 905; Jones, Chattel Mortgages, § 44; *Kimball v. Thompson,* 13 Met. 283; *Allen v. Center Valley Co.* 21 Conn. 130; *Hanford v. Prouty,* 133 Ill. 339; *Carver G. & M. Co. v. Bannon,* 85 Tenn. 712; *Gallagher's Appeal,* 114 Pa. St. 353; *Wilcox v. Kellogg,* 11 Ohio, 394; *Ellison v. Lucas,* 87 Ga. 223; *Purple v. Farrington,* 119 Ind. 164; *Poole v. Seney,* 66 Iowa, 502; *Woodmansie v. Holcomb,* 34 Kan. 35; *Hanover Nat. Bank v. Klein,* 64 Miss. 141; *Flack v. Charron,* 29 Md. 311; *Beckwith v. Manton,* 12 R. I. 442; *Rose v. Gunn,* 79 Ala. 411; *Allen v. Grissom,* 90 N. C. 90; *Couchman's Adm'r v. Maupin,*

78 Ky. 33; *Vietor v. Glover*, 17 Wash. 37; *Rice v. Barnard*, 20 Vt. 479; *White v. Parish*, 20 Tex. 688; *Simmons H. Co. v. Thomas*, 147 Ind. 313; *National Bank v. Sprague*, 20 N. J. Eq. 13; *Wilson v. Gamble*, 50 Neb. 426; *Case v. Beauregard*, 99 U. S. 119; *Huiskamp v. Moline W. Co.* 121 U. S. 310.

The foregoing are only a few of the numerous authorities extant on the question discussed. As stated by Mr. Justice NEWMAN: "The authorities are nearly uniform. Only a few cases are out of line."

In *Case v. Beauregard*, 99 U. S. 119, Justice STRONG, in delivering the opinion of the court, said: "By the rule of *Ex parte Ruffin*, which is generally accepted as the law, a *bona fide* transfer of partnership property to an individual changes its character by extinguishing partnership equities. Consequently derivative equities of the creditors, though the firm be insolvent, are at an end. The preference right of partnership creditors depends upon there being partnership property when that preference is sought to be enforced."

In *Kimball v. Thompson*, 13 Met. 283, the partners sold out the partnership property, ignoring the rights of creditors. The lower court held that the sale was *prima facie* void. On appeal, that was reversed, Chief Justice SHAW saying in the opinion: "The sale was *prima facie* valid, subject to be defeated by creditors only by their being able to show that the conveyance was fraudulent."

In *Hanford v. Prouty*, 133 Ill. 339, the court, by Mr. Justice BAILEY, said: "The equitable rule which requires the assets of the firm to be applied to the payment of firm debts is founded, not upon the equities of the creditors, but upon the equities of the partners. It follows that a sale made in good faith by one partner to his copartner or to a third person, of all of his interest in the firm, is as valid to transfer the entire property to the vendee as in a sale between any individuals, although the buyer and seller are insolvent, and they thus defeat partnership creditors; and as the firm cred-

Excelsior Mill Co. vs. Hanover.

itors have no lien the partner can dispose of the property as his own and pay his separate creditors to the exclusion of joint creditors, or *vice versa*."

In *Couchman's Adm'r v. Maupin*, 78 Ky. 33, the court, by Justice COFER, said, in effect, that the members of a firm, acting together, have the same freedom in the disposition of the firm property which an individual has to control and dispose of his property; that is, all the partners, by their voluntary act, may waive the lien upon partnership effects, which is a lien for their individual protection, not that of creditors.

In *Purple v. Farrington*, 119 Ind. 164, the court said: "The central question is whether the members of a partnership, largely indebted and insolvent, may mortgage the firm property to secure the individual indebtedness, if in so doing they act in good faith. Where the partnership assets remain under the control of the partners, they have the power to appropriate any portion of it to pay or secure the individual debts of the members of the firm. The mere preference of individual over partnership creditors by the execution of a chattel mortgage in the firm name by the authority of the partners, upon the property of the firm, is not of itself such a fraud upon the partnership creditors as will authorize the setting aside of a mortgage at the suit of a creditor."

All the cases cited are along the same line. Further quotations would unnecessarily lengthen this opinion.

We cannot properly close without referring to the decisions of this court where, as said at the opening, observations are found indicating that the rule of *Ex parte Ruffin*, 6 Ves. 19, was overlooked or rejected. Such cases were not overlooked when *Thayer v. Humphrey*, 91 Wis. 276, was decided, though they are not there referred to. One of the significant cases is *Willis v. Bremner*, 60 Wis. 622. There, in an assignment for the benefit of creditors, a preference to individual creditors of the members of the partnership making the assignment, was involved. The court held the preference

fraudulent.   It is not in conflict with *Ex parte Ruffin*.   The
decision necessarily resulted from the statute pronouncing
all conveyances by an insolvent person, in trust for himself,
void as to his creditors, a quite well recognized exception to
the rule of *Ex parte Ruffin*.    Such cases have nothing to do
with the subject we here discuss.

*Cribb v. Morse*, 77 Wis. 322, is often referred to.   Justice
ORTON, who wrote the opinion, said that the chattel mort-
gage given by the members of the firm as individuals, on
firm property, to secure a debt due from the individuals, was
void, "the firm being insolvent."   The case seems to have
turned on whether the mortgage was a partnership mort-
gage, or a mortgage given by the members of the firm as
individuals, though Justice ORTON did put some stress on the
fact that the firm was insolvent.    Of the authorities cited in
the opinion, one is from New York, where the rule of *Ex
parte Ruffin* has been practically rejected; one from New
Hampshire, the only state where it is held that creditors
have an independent lien upon the property of a partnership;
one from the federal district court, based on the New Hamp-
shire rule, ignoring the decision of the supreme court of the
United States on the subject.    It will be observed that the
doctrine here discussed was not necessary to the decision in
the *Cribb Case*, and that what is there said should not be
considered controlling; and that the authorities cited create
a doubt at least as to whether the question received careful
consideration.

Another case is *Keith v. Armstrong*, 65 Wis. 225.   That,
like *Willis v. Bremner*, is where a preference, given to in-
dividual creditors in a partnership assignment, was held
fraudulent.   The general question of the power of the mem-
bers of an insolvent firm, acting *bona fide*, to convert part-
nership property into individual property, or use it to pay
individual indebtedness, was not in the case.  · Justice COLE
said: "The rule is elementary that a partner cannot appro-

Excelsior Mill Co. vs. Hanover.

priate partnership funds to the payment of his individual debts, unless the firm at the time be solvent and have sufficient property remaining to discharge all partnership liabilities." That was said by way of argument in regard to an act where all the members of the partnership joined, so the observation must be taken as meaning that the members of an insolvent partnership, acting together, cannot use the partnership property for purposes prejudicial to the rights of partnership creditors, and that the law in that regard is elementary. That is contrary to *Ex parte Ruffin*, 6 Ves. 19, to what the court held in *Thayer v. Humphrey*, 91 Wis. 276, and to what we have shown to be the weight of authority. It was outside the case and, it seems, should not be considered as authority. That the subject was not carefully considered is evident from the following authorities cited in support of the language quoted. *Vernon v. Upson*, 60 Wis. 418, and *Willis v. Bremner, supra*, both involved partnership assignments with preferences to individual creditors. Each turned on the statute which prohibits the conveyance, by an insolvent person, of property in trust for his own use. In *Viles v. Bangs*, 36 Wis. 131, the question was, Can a partner, without the consent of his copartner, apply partnership property to the payment of his individual debts? Of course he cannot, but with such consent it seems that he can. *Cotzhausen v. Judd*, 43 Wis. 213, involved the same question. *McLinden v. Wentworth*, 51 Wis. 170, involved the question of whether a new firm, consisting in part of members of an old firm which had dissolved and sold its assets to such new firm, was liable without its consent for the debts of the old firm, and whether a partner can bind his firm for money borrowed by him to pay his part of the partnership capital, the lender knowing all the facts. Neither of those questions involved that referred to by the language in support of which the case was cited. The last case cited in the opinion is *David v. Birch-*

*ard*, 53 Wis. 492, which turned on faulty instructions. The power of the members of an insolvent firm, acting *bona fide*, to use firm property regardless of the firm creditors, was not involved. After disposing of the instructions so as to require a reversal of the judgment, the court said in substance that a member of an insolvent firm, even acting *bona fide*, cannot part with his interest in partnership assets with the consent of his copartner, to the prejudice of partnership creditors. An examination of the case and briefs does not disclose that such question was presented in the court below. It appears to have been discussed in this court for the first time. It has the appearance of having been treated without careful consideration. The suggestion in the opinion is contrary to *Thayer v. Humphrey* and the doctrine that the equity of creditors in partnership property is wholly derivative and dependent.

From what has been said it is apparent that the relation between the creditors of an insolvent partnership and the members thereof, and the power of such members as to partnership property in the circumstances presented here, was not carefully considered and decided by this court till *Thayer v. Humphrey*, 91 Wis. 276, or necessarily decided in any previous case. Further, that the authorities elsewhere are quite uniform in support of the conclusion reached in the *Thayer Case*. The theories of courts that hold otherwise are quite numerous. In New Hampshire, as indicated, it is held that the creditors of a partnership have an independent equity in the partnership assets in case of insolvency. In New York and a few other states the idea prevails that insolvency impresses the partnership assets with a trust in favor of creditors; and in a few other states a conveyance of partnership property to secure or pay the individual indebtedness of a member of an insolvent firm has been termed a conveyance without consideration, a gift as it were. The rule of *Ex parte Ruffin*, 6 Ves. 19, is inconsistent

with each of such theories. The idea that mere insolvency impresses the assets of a firm or individual with a trust in favor of creditors, has been repeatedly rejected by this court. The idea that the use of partnership assets for the benefit of a member of the partnership is in any wise a gift, ignores the fact that when so used the partner is chargeable with the property as between him and his copartner. The effect of the partnership relation is to make him pay whatever price is agreed upon between the partners, and, if none be agreed upon, to pay the full value of the property. That such a transaction can be considered in any sense a gift will not bear a moment's examination without disclosing its infirmity.

This opinion has now been extended to a much greater length than was anticipated at the beginning, yet much more might be said. The purpose of it, however, has been accomplished. We have shown that the doctrine of *Ex parte Ruffin* has been adopted in this state and that it is the law as understood in most courts of this country and England; that under such rule the rights of creditors of a partnership, whether solvent or insolvent, in the firm assets, is wholly derivative and dependent; and that they have no lien on partnership assets, only an equitable right to enforce the equity of the partners, which equity such partners, acting *bona fide*, may extinguish at will, regardless of the rights of creditors. Such partners, though of an insolvent firm, may make a *bona fide* sale of the partnership property to one of their number or to a stranger, or convey it to pay individual indebtedness, or allow the same to be sold on execution for that purpose, or may mortgage the same to that end. So long as the property is under the control of the partners, their power over it, acting in good faith, is the same, precisely, as the power of an individual over his individual property. Insolvency impresses no trust upon it, and a conveyance of it for no other purpose than to pay an

individual debt to one of the members of the partnership is untainted with any wrong of which partnership creditors can complain. Testing the decision appealed from by these principles, it is wrong, and the judgment should be reversed because of such error, as well as on the ground stated in the opinion of the court.

No inference is to be drawn as to the position of any other member of the court on the question here discussed, because it is not treated in the opinion of the court. My brethren simply concluded that the point mentioned in such opinion was decisive and that no other question need be considered or discussed.