BEDFORD *v.* McDONALD.

(*Jackson.*    April 28,  1899.)

1. PARTNERSHIP. . *Creditors' lien upon firm assets.*

The creditors of a firm cannot, after the members thereof have
divided the assets among themselves, waiving or failing to as-
sert any lien they have as partners, set up and enforce such
lien, even if the firm was insolvent, unless the division was a
fraud upon them. (*Post, pp. 360–365.*)

Cases cited and approved: Gin Co. *v.* Bannon, 85 Tenn., 712;
House *v.* Thompson, 3 Head, 512; Gill *v.* Latimore, 9 Lea, 381.

2. SAME. *Purchaser of firm assets from partner not innocent, when.*

One who, with knowledge that a firm had dissolved and was in-
solvent, accepted in payment of an antecedent debt a transfer
from one of the partners of a note which originally belonged
to the firm, but which had been allotted to the transferer in a
division of the firm assets, cannot claim to be an innocent pur-
chaser without notice entitled to protection against the firm
creditors, if the division of the assets between the partners
was fraudulent, although his debt was a *bona fide* one. (*Post,
pp. 365, 366.*)

Case cited and approved: Allen *v.* Bank, 6 Lea, 558.

3. SAME. *Firm creditor not estopped to claim partnership asset, when.*

A firm creditor will not be estopped to follow a note originally
belonging to the firm in the hands of a transferee from one of
the partners, after a fraudulent division of the assets by the
partners, or to assert that a judgment recovered thereon
should be applied to the firm debts, merely because he ap-
peared for the maker of the note, who was his nephew, in the
action by the transferee thereon, and did not challenge the
latter's ownership until judgment had been recovered and had
been secured by a stayor, where it does not appear that any
concessions were granted by the plaintiff in that action in or-
der to quiet his title to the note, or that anything was said on
the trial as to the true ownership of the note and no cost or

Bedford *v.* McDonald.

expense was incurred on account of anything done or said by such creditor. (*Post, pp. 366, 367.*)

Cases cited and distinguished: Barham *v.* Turbeville, 1 Swan, 439; Fields *v.* Carney, 4 Bax., 137; Galbraith *v.* Lunsford, 87 Tenn., 104.

4. INJUNCTION. *Effect and extent of.*

An injunction prohibiting one from receiving any of the proceeds of sale under execution upon a judgment recovered by him, does not prevent him from bidding at the sale as any third person might, but, instead of crediting his judgment or applying it in payment, he will be required to pay the amount bid into Court and await further orders before any credit can be given. (*Post, p. 368.*)

5. JUDGMENT. *Stayor's obligation.*

The stayor of a judgment obtained by a fraudulent assignee of the debt is liable thereon to the assignor's creditors who successfully impeach the transfer of the claim. (*Post, p. 368.*)

6. EXECUTION. *Sale under, invalid, when.*

Sale of land under execution will be set aside at the suit of the plaintiff in the judgment, where it was made under circumstances that virtually prevented him from bidding on it, and a bid made by a third party failed to satisfy the judgment. (*Post, p. 369.*)

---

FROM SHELBY.

---

Appeal from the Chancery Court of Shelby County. JNO. L. T. SNEED, Ch.

R. M. HEATH for Bedford.

J. H. MALONE for McDonald.

WILKES, J. T. T. and J. M. McDonald were partners in business at Collierville, Tenn., under the

firm name and style of McDonald Bros. They failed in business and dissolved partnership December 4, 1894. T. M. McDonald is a son of T. T. McDonald. He was also a merchant, and owed the firm of McDonald Bros. a debt. W. H. Bedford owed a debt to T. M. McDonald. On February 7, 1895, W. H. Bedford, being indebted also to McDonald Bros. and to the individual members of that firm, executed his notes, one to T. T. McDonald for $523.87 and one to J. M. McDonald for $625. T. T. McDonald kept the note for $523.87 and used it as collateral from time to time, and, after about two years, being indebted to his son, T. M. McDonald, he transferred it to him in payment of his debt. About $25 of this note represented an individual debt that W. H. Bedford owed T. T. McDonald, and the balance of $498.87 was the one-half of the debt due from W. H. Bedford to McDonald Bros. The other half was included in the $625 given to J. M. McDonald. In other words, W. H. Bedford being indebted to the firm of McDonald Bros. in the sum of $997.74, this amount was divided between the two partners equally and included in notes given to each for this amount and the amount due each individually. W. H. Bedford having failed to pay the note for $523.87, T. M. McDonald sued him on it. On the trial before the Justice of the Peace, complainant, who is the uncle of W. H. Bedford, appeared for him and represented him and had various credits

entered, and, as a final result, judgment was rendered for $599. Execution was stayed by. Mrs. Virginia Bedford, the sister-in-law. of complainant. After the stay expired execution issued and was returned indorsed no personal property to be found of either defendant. A levy was then made on land of Mrs. Virginia Bedford, and it was condemned and advertised for sale on January 13, 1898.

On January 10, 1898, H. L. Bedford filed a bill claiming that he was a creditor of McDonald Bros.; that as such he had a lien on this judgment, as partnership assets, and on behalf of himself and all other creditors of McDonald Bros. sought to have the proceeds of sale paid upon the partnership debts, and enjoined T. M. McDonald, the judgment creditor, from receiving or collecting any of the proceeds of sale. The bill charged in detail that the judgment was really firm assets; that T. M. McDonald paid nothing for it; that its transfer to him was a fraud and made to hinder and delay creditors of McDonald Bros. and T. T. McDonald, and that T. M. McDonald participated in and aided this fraud.

T. M. McDonald answered and claimed that H. L. Bedford was present at the time the judgment was rendered in his favor on the $523.87 note and made no claim. that it was partnership assets or that he had any lien upon it. The answer was filed as a cross bill, and denied any right in the complainant or any creditors of McDonald .Bros. to

reach the note as firm assets; that it had been transferred to him in good faith to pay an honest debt, and claimed that the sale of the land was void for imperfect description and because it had been conveyed in trust, and the cross bill asked for a resale of the land free from redemption. It was, when sold under execution, struck off to S. P. Wilson for $300, and, he not complying with the terms of sale, it was resold to H. L. Bedford for the same sum of $300. Mrs. Bedford, in her answer to this cross bill, resisted any attempt at resale and insisted on the first sale and her right to redeem.

The Chancellor gave judgment for the complainant's debt and ordered the bill to stand as a general creditors' bill for the benefit of all creditors of McDonald Bros., and dismissed the cross bill, and defendant appealed. As error he says:

1. That the creditors of McDonald Bros. had no lien on the two notes which the partners had taken to close up the amount due them from W. H. Bedford, and especially none as against T. M. McDonald or the proceeds of sale of the lands of the stayor, Mrs. Virginia Bedford.

2. That if mistaken in this, complainant could have no lien on the judgment or note on which it was based, because the defendant had offered him enough of the note to pay the debt ' he claimed against the firm, and he had refused it and renounced all claim to it, and encouraged defendant to proceed in his suit against. W. H. Bedford, and

Bedford *v.* McDonald.

had made no claim to the note until defendant had gone to the expense and labor of obtaining the judgment levying on the land and condemning the same, and he is now estopped to claim the proceeds of the judgment.

3. That the Court did not hold the sale void because of imperfect description of the land and because it was conveyed in trust and the title had not been cleared up, and because he was virtually prevented from bidding at the sale, because he was enjoined from receiving the proceeds and the property was thus brought to sale under circumstances prejudicial to it, and which resulted in a purchase for $300 of land worth $3,000.

It appears from the testimony of T. T. McDonald that nothing special was said between him and his former partner when they divided up the W. H. Bedford note between themselves as to waiving or retaining any lien; that he thought he had a right to take the note and leave the firm creditors in the lurch, and that he was never willing to use the notes in paying firm debts; that the division was made in order to effect a settlement with W. H. Bedford, but not for the purpose of using up the money so the creditors of the firm could not get it.

T. M. McDonald states that he knew the firm of McDonald Bros. had failed and that they had divided the assets between themselves, and that the note of $523.87 was given to him in payment of an antecedent debt.

In regard to the first assignment of error, that there was no lien on this note for partnership debts, it is evident that the partners expressly retained no lien when they divided the debt of W. H. Bedford between themselves, but the fair inference is that they intended to waive any such lien. It appears also that the Chancellor did not find, in terms, that this division was made fraudulently, but simply found the facts as before stated, and the question is, whether when the partners have made such division of partnership assets among themselves, waiving or failing to assert any lien they have as partners, can the creditors of the firm set up and enforce such lien? We think they cannot, unless it be on the ground that such division is a fraud, which a Court of Chancery will not tolerate, but will treat the assets still as firm assets and liable as firm debts. In other words, the assets cannot be subjected on the ground of a lien, for that can only be worked out through the partners, and where there is no lien in favor of partners there is none in favor of firm creditors. The general doctrine is laid down in the case of the *Gin Co.* v. *Bannon,* 85 Tenn., 712, in these words: "The general creditors of a firm have no lien upon the partnership assets if the partners have none themselves. The claims of the firm creditors must be worked out through the equities of the partners. And a joint conveyance by partners of their partnership property in trust to secure their individual debts, operates to defeat their own

lien and equity thereon, and *a fortiori* that of firm creditors, and gives priority of satisfaction out of the assets conveyed to the individual creditors. So partners may convey firm assets to one of their own number free from any lien for firm debts." *House* v. *Thompson*, 3 Head, 512. To the same effect is the ruling in *Case* v. *Beauregard*, 99 U. S., 119; *Ex Parte Ruffin*, 6 Vesey, 119-126; *Fitzpatrick* v. *Flanagan*, 106 U. S., 648; *Hulscamp* v. *Moline Plow Co.*, 121 U. S., 310. And the mere insolvency of the firm does not change the rule. *Fitzpatrick* v. *Flanagan*, 106 U. S., 648. To the same effect see *Wiggins* v. *Blackshear*, 86 Texas, 670; *Reynolds* v. *Johnson*, 54 Ark., 452; *Victor* v. *Glover*, 17 Wash., 37; *Bank* v. *Klien*, 64 Miss., 151 (S. C., 60 Am. Rep., 47); *Goddard* v. *McCune*, 122 Mo., 426; *Ellison* v. *Lucas*, 87 Ga., 227 (S. C., 27 Am. St. Rep., 242); *Harris* v. *Meyer*, 84 Wis., 147; *Purple* v. *Farrington*, 119 Ind., 164.

This we conceive to be a rule supported by an overwhelming weight of authority. But in all these cases and others holding the same doctrine stress is laid upon the fact that the transfer by the partners to third persons is made in good faith and for no fraudulent purpose of defeating firm creditors in collection of their debts, and the mere preference of an individual debt over partnership debts is not in itself and alone fraudulent. But where there is a fraudulent design, whether expressed or necessarily implied from a division of partnership property be-

tween the partners, to defeat the creditors of the firm, the Courts will treat the fraud as vitiating the division or transfer and the assets as still belonging to the firm and subject to its debts. This is illustrated by the case of *Gill* v. *Lattimore*, 9 Lea, 381, where two partners divided certain horses and wagons between themselves and then claimed them as individual property and exempt from execution. The Court held that this could not be done and the horses and wagons were still firm property and subject to partnership debts. It would be difficult to distinguish that case in principle from the one now at bar, if the note had been seized in the hands of the partner, T. T. McDonald, and counsel for defendant concedes that in that case the seizure would have been good and the debt could have been subjected, but it is insisted that T. M. McDonald, the transferee of the note, is entitled to hold it and its proceeds as a *bona fide* assignee of T. T. McDonald. It appears that T. M. McDonald, when he received this note, knew that the firm had dissolved; that it was insolvent, and that he took it for an antecedent debt. He cannot, therefore, claim to be an innocent purchaser without notice, even though his debt is *bona fide*. *Allen* v. *The Bank*, 6 Lea, 558.

It is insisted that complainant, by his conduct at the trial before the Justice of the Peace, has estopped himself from claiming the note or judgment rendered on it as partnership assets, since he made no

such claim at the trial, but, by simply insisting on certain credits for W. H. Bedford, impliedly recognized the right of defendant to recover the balance, after giving these credits, and then permitted execution to be stayed, and waited until the expiration of the stay before he made any claim. The argument is that T. M. McDonald, by his conduct, was encouraged to incur the trouble and expense of the suit, and perhaps to concede other claims which he held against W. H. Bedford in order to obtain the judgment, and the cases of *Barham* v. *Turberville*, 1 Swan, 439; *Fields* v. *Carney*, 4 Baxter, 137; *Galbraith* v. *Lunsford*, 87 Tenn., 104, are relied on as sustaining this view.

We cannot see any tangible ground for estoppel in the case. T. M. McDonald was claiming the note, and had sued upon it, as well as other claims he held against W. H. Bedford. All that complainant did was to insist upon certain set offs or credits for his nephew. It is not shown these were granted in order to quiet title to the balance of the note, or that anything was said on the trial as to the true ownership of the note. No costs or expense was incurred on account of anything done or said by complainant, and the most that can be said is that he waited on his rights until T. M. McDonald had obtained the judgment and had it secured by a stayor. We cannot see any want of good faith in this nor any ground for estoppel.

It is said that an offer was made to pay com-

plainant out of this debt—that is, to credit the note
if he would take his claim against W. H. Bedford.
This he was unwilling to do, as W. H. Bedford
was his kinsman and was insolvent, and we can see
no obligation he was under to do so, nor can we
see why, after the debt was secured by a stayor,
he might not have been willing to look to it when
he was unwilling before that. It is said the sale
should be set aside because defendant was prevented
from bidding at the sale. The injunction did not go
to this extent, but only to the extent of prohibit-
ing him from receiving any of the proceeds of sale.
The effect of this was that he could still bid as
any third person might, but instead of crediting his
judgment or applying it in payment, he would have
been required to pay the amount bid into Court and
await further orders before any credit could be given.
It is also insisted that the second sale was made
after the crowd had dispersed and there were no
bidders, and this was prejudicial to the sale. It is
said, also, that whatever may be complainants' rights
as against T. M. McDonald, they cannot be enforced
as against Mrs. Virginia Bedford, the stayor, and
it is insisted her obligation to pay is an independ-
ent one to T. M. McDonald, and not to the firm.
This position is, we think, untenable, as the stay is
a mere incident of the judgment and security for it
and occupies, so far as this question is concerned,
no independent status.

It is said the sale is void for want of certainty

Bedford *v.* McDonald.

in the description of the land in the levy. It will be noted that this levy was made or caused to be made by defendant himself and that he was willing to purchase under it, and one of his complaints now is that he was not allowed to do so. It will be noted, also, that Mrs. Virginia Bedford takes no exception to the levy, but insists that it and the sale thereunder remain undisturbed, and she only insists upon her right to redeem and that such right be preserved.

We are of opinion that the sale was made for an insufficient price; that it was made under such circumstances as virtually prevented defendant from bidding for it; that, owing to these and other complications set up in the cross bill, the sale was not fairly made and should be set aside and the land resold after the title and description are perfected, but such sale will be subject to redemption for cash, and the decree of the Chancellor dismissing the cross bill is reversed and the cause will be remanded to be proceeded with according to this opinion and the prayer of the cross bill. The proceeds of sale will be treated as partnership assets for the benefit of partnership creditors. The cost of this Court will be divided between complainant and defendants and the cost of the Court below will be paid as the Chancellor may hereafter direct.