FERNHABER, Trustee, Respondent, vs. STEIN and others, Appellants.

*October 19—November 13, 1923.*

*Fraudulent conveyances: Participation in fraud of bankrupt: Inadequacy of consideration: Transfer by way of foreclosure: Conveyance to corporation: Replevin: Damages.*

1. The answer of the jury to a question in the special verdict that the father of the defendant bankrupt participated in defendant's intent to hinder, delay, and defraud creditors, is not inconsistent with its answer to other questions in the verdict that the father had no actual knowledge of the bankrupt's fraudulent intent and that he had no knowledge of such facts as should have put him upon inquiry.   p. 66.

2. While under sec. 2323, Stats. 1917, a conveyance or charge cannot be adjudged fraudulent as against creditors or purchasers solely on the ground that it was not founded on a valuable consideration, it does not follow that gross inadequacy of consideration is not a circumstance in connection with other facts to prove fraudulent intent.   p. 66.

3. A collusive and fraudulent sale under foreclosure of a mortgage or deed of trust on real or personal property, either under a power therein or by legal proceedings, will be set aside at the suit of creditors of the mortgagor or grantor; and fraud on creditors perpetrated by judicial procedure, as a mortgage foreclosure, is as impotent as any other imposition, whatever the scheme, as equity looks to substance.   p. 69.

4. Where the only assets of a debtor from which the creditors could expect to be paid are shifted to a corporation organized for that specific purpose, the court will subject the property so transferred to the claims of the creditors whether the debtor is an individual, a partnership, or another corporation; and the fact that the persons controlling the vendee corporation are substantially the same persons as those making the transfer strongly indicates fraud.   p. 69.

5. The trial court has the right to draw legitimate inferences from the facts proved, and the supreme court will not disturb those inferences unless they are clearly wrong.   p. 70.

6. Where the plaintiff trustee in bankruptcy of the defendant bankrupt, in replevin proceedings elected to take judgment under the statutes for the recovery of a truck unlawfully detained, with damages for its detention, and defendants, by filing the necessary bond, continued to use it during the litigation, the assessment of damages for its detention will not be disturbed, as plaintiff might have derived revenue from the truck if it had been in his possession, by renting it, though it might have been necessary to obtain the permission of the bankruptcy court.   p. 70.

APPEAL from a judgment of the circuit court for Milwaukee county: GUSTAVE G. GEHRZ, Circuit Judge.   *Affirmed.*

Replevin.   The action was brought by the trustee of the bankrupt estate of defendant *Werner Stein* to recover three trucks and a touring car alleged to have been transferred by the bankrupt in fraud of creditors.   At the trial claim

was abandoned as to the touring car and one truck. The trial court ruled in favor of defendant *Mrs. Schattschneider* as to one truck. There is concerned on this appeal a three-and-one-half ton Republic truck only.

Defendant *Werner Stein* was engaged in the carting business in Milwaukee. In August, 1918, he owed, among items, the sum of $1,490 to the Merchants & Manufacturers Bank, $180 to the Pauly Motor Truck Company on a purchase-money note, and $420 to the same company for a repair bill.

By a chattel mortgage dated August 22, 1918, *Werner Stein* incumbered the Republic truck to secure payment to *August Stein,* his father, of the sum of $1,500. On August 23d he procured his partner, one Hubert, to sign the mortgage. The mortgage was filed on August 26th.

In September, 1918, suit was begun by the Pauly Motor Truck Company to collect the repair bill. In November, Hubert, his former partner, began suit against *Werner Stein* for $1,500. In January, 1919, suit was begun by the bank and judgment was entered in its favor for $1,612.68 on February 28, 1919.

On February 21, 1919, one week before the entry of judgment in favor of the bank, *August Stein* foreclosed the mortgage on the Republic truck. It was bid in at the sale by *Arnold Stein,* a brother of defendant *Werner Stein,* for $1,225. It does not appear that any cash was paid by *Arnold Stein,* but that his father was given a credit of $700 on an indebtedness said to exist in favor of *Arnold Stein* against his father.

On March 1, 1919, defendant *Mrs. Schattschneider* foreclosed a mortgage on a Packard truck, which mortgage had been given on February 5th.

On March 3d *Werner Stein* filed a voluntary assignment for the benefit of creditors. His inventory showed

liabilities of $6,700 and assets of $1,550, $1,000 of which consisted of counterclaims in suits which had been begun against him.

On March 12, 1919, the *Cream City Cartage Company* was organized. No cash was paid for the stock. Defendant *Mrs. Schattschneider* turned in the Packard truck which she had bid in on the foreclosure for fourteen shares of stock of the par value of $1,400. Seven shares were issued to *Arnold Stein* and five to *August Stein*. Payment for these shares was made by a joint bill of sale of the Republic truck executed by *Arnold* and *August Stein*. Six shares were issued to *Werner Stein* and one to his wife, payment being made by the transfer of a Kissel Kar truck. *August, Arnold,* and Mrs. Stein were chosen directors at the first meeting.

Hubert, a witness for plaintiff, testified that *Werner Stein* presented the chattel mortgage on the truck in question to him for signature on August 23d; that he at first objected to signing it; that *Werner Stein* told him that he did not owe his father anything, but that the mortgage was made to keep the creditors from getting the truck.

There was testimony on the part of *August* and *Werner Stein* to the effect that since 1912 the father, *August Stein,* had been lending money in small amounts to *Werner*. *August Stein* testified that he had kept a record of the amounts but had lost it, and that the amount was about $1,500.

In a special verdict the jury found that on August 22, 1918, there was approximately $180 owing to *August Stein;* that on this date *Werner Stein* executed a mortgage with intent to hinder, delay, and defraud creditors; that "*August Stein,* on said August 22, 1918," did not have actual knowledge of such intent; that *August Stein* on the above date did not have knowledge of such facts and circumstances as would put a prudent person on inquiry; and that *Arnold Stein,* at the time of the chattel-mortgage foreclosure sale

on February 26th, did not participate in the intent of *Werner Stein* to hinder, delay, and defraud creditors.

The sixth question was as follows: "Did *August Stein* participate in such intent of *Werner Stein* to hinder, delay, or defraud creditors of the latter? *A.* Yes."

As to defendant *Mrs. Schattschneider* the jury found that on February 5th (the date on which she had been given a mortgage on a Packard truck) she did not have actual knowledge of the intent of *Werner Stein* to hinder, delay, and defraud creditors; that on that date she did not have knowledge of such facts as would have put a prudent person upon inquiry by which she would have acquired knowledge of the intent to defraud creditors; and that she did not participate in the intent of *Werner Stein* to hinder, delay, and defraud creditors.

The value of the truck was found to be $1,250. The amount due plaintiff because of the detention of the truck was found to be $2,250.

Judgment was ordered awarding the truck to plaintiff, together with $2,250 damages for its detention, less the $185 found by the jury to be owing to *August Stein* at the time of the delivery of the chattel mortgage.

For the appellants there was a brief by *Rowan, Kalaher & Stoecker* of Milwaukee, and oral argument by *F. J. Rowan.*

For the respondent there was a brief by *E. J. Koelzer,* attorney, and *John Sander* and *Hennessey & O'Boyle,* of counsel, all of Milwaukee, and oral argument by *Oliver L. O'Boyle.*

JONES, J. It is·claimed by counsel for appellants that the answer of the jury to the effect that the consideration of the $1,500 mortgage from *Werner Stein* to his father was approximately $180 should be set aside. The testimony as to the relations of the parties; the fact that although it was claimed that books of account had been kept and the original

books were not produced, and the unsatisfactory testimony that any such indebtedness existed on the part of *Werner* to his father as was claimed, fully justified the jury making the answer given.

But it is also claimed that the further answer that the father, *August Stein,* participated in the intent of *Werner Stein* to hinder, delay, and defraud creditors, was wholly inconsistent with the answers to the fourth and fifth questions in which the jury found that the father had no actual knowledge of the fraudulent intent of *Werner* and that he had no knowledge of such facts as should have put him upon inquiry.

It is argued that no change in the situation took place between the 22d day of August, when the mortgage was signed by the father, and on the 26th, when it was recorded, and that it must be presumed that it was delivered on the 22d. The testimony shows that between those dates the mortgage was executed by the partner of *Werner* after they had discussed it and after the partner had taken the advice of his attorney.

What other conversations or transactions may have taken place between father and son during the interval does not appear. The court found that the evidence warranted the conclusion that the chattel mortgage was delivered on August 26th; that in view of the fact that *August Stein,* the father, placed on record and afterward enforced a mortgage which had been given for a grossly inadequate consideration, and from the other facts and circumstances, there was no inconsistency between the findings already mentioned.

It is true that under the statute, sec. 2323, Stats. 1917, the conveyance or charge cannot be adjudged fraudulent as against creditors or purchasers solely on the ground that it was not founded on a valuable consideration. But it does not follow that gross inadequacy of consideration is not

a circumstance in connection with other facts to prove the fraudulent intent.

The jury found that *Arnold Stein* at the time of the foreclosure sale did not participate in the intent of *Werner Stein* to defraud creditors. The trial court set aside the finding of the jury; finding that *Arnold Stein* was not an innocent purchaser for a valuable consideration, and stated in the finding:

"The only evidence of any value passing from *Arnold* to *August W. Stein* was the latter's statement, by way of conclusion only, that he owed some $700 debt to the former, but the actual facts with reference thereto were not related nor was any tangible evidence of the alleged indebtedness produced. There was no evidence of an actual cancellation, or surrender, of this debt at any time."

*Arnold Stein* was made a defendant in this action, but seemed to manifest but little interest in it, as he was not present at the trial and his deposition was not taken.

The question was not submitted to the jury to find whether the *Cream City Cartage Company* was a *bona fide* purchaser without notice, and the court, pursuant to sec. 2858*m*, Stats., found that it was not.

It is contended by counsel for appellants that there was no evidence that the corporation had notice of any fraud when it received the bill of sale of the truck in consideration for issuing stock to *Arnold Stein* and *August Stein;* that notice to the stockholders was not notice to the corporation; and that this was especially true so far as concerned the rights of *Mrs. Schattschneider,* since the jury exonerated her from participation in any intent of *Werner Stein* to defraud creditors. To support this finding of the court, respondent's counsel rely on the evidence showing the utter insolvency of *Werner Stein* when the mortgage to his father was given, the finding of the jury as to his fraudulent intent, the succession of suits brought against *Werner Stein* after

the mortgage was given, the giving of the mortgage to *Mrs. Schattschneider,* his mother-in-law, during the pendency of these actions, which mortgage included other property and was a second mortgage on the truck in question. They rely on the foreclosure of the mortgage by *August Stein* with the consent of *Werner,* and the foreclosure of her mortgage by *Mrs. Schattschneider* long before it was due, and the formation of the corporation immediately afterward, and the fact that after the formation of the corporation *Werner Stein* continued to drive the same trucks and conduct the same business as an employee of the corporation.

Counsel for respondent further argue that these and other facts disclosed suspicious circumstances surrounding the formation of the corporation, and that it was a family corporation organized to protect *Werner* in his fraudulent plan. On this subject the court found:

"Doubtless, also, the *Cream City Cartage Company* was not a *bona fide* purchaser without notice, for it was legally chargeable with the knowledge of *August W.* and *Arnold Stein,* if not also with that of *Werner Stein.* Moreover, the entire transaction attacked by the plaintiff, commencing with the making of the fraudulent mortgage and ending with the turning in of the truck to the *Cartage Company,* with continued use and operation of the truck by *Werner Stein,* was a family arrangement carried out by parties whose relations were so close that, upon all the facts and circumstances, the court should now supplement the verdict with its findings consistent with the above conclusion."

Since we conclude that the finding of the court should be sustained, we shall not detail the testimony on which the finding rests, nor enter into a discussion of the subject whether notice to most of the stockholders and to the president and directors constituted notice to the corporation of the frauds which are claimed to have vitiated its title to the truck. On the facts found by the court the case is distinguished from those relied on by appellants' counsel.

Counsel for appellants argue that the sale of the truck

on foreclosure and the subsequent sale to the corporation in exchange for stock precluded the trustee from questioning the title of the corporation, and they cite the following cases: *Salter v. Bank of Eau Claire,* 97 Wis. 84, 72 N. W. 352; *Excelsior M. Co. v. Hanover,* 102 Wis. 309, 78 N. W. 737. We do not think these cases apply to a situation like that which the court found to exist in the present case.

The court came to the conclusion that the mortgage was fraudulent; that the foreclosure sale was collusive; and that the formation of the corporation was only one step in a plan to defeat the rights of creditors.

"A collusive and fraudulent sale under foreclosure of a mortgage or deed of trust on real or personal property, either under a power therein or by legal proceedings, will be set aside at the suit of creditors of the mortgagor or grantor. Fraud on creditors perpetrated by judicial procedure, as a mortgage foreclosure, is as impotent as any other imposition, whatever the scheme, as equity looks to substance." 27 Corp. Jur. 458, 459, and cases cited.

Nor are the rights of creditors defeated merely because property has been conveyed to a corporation.

"A very usual form of fraudulent conveyance consists of the shifting of the assets of a debtor to a corporation frequently formed for that specific purpose, by which means the only assets from which creditors could expect to be paid are placed beyond reach of their process. The courts look askance at such transactions, whether the debtor be an individual, a partnership, or another corporation, and, if the proper elements are present, will subject the property so transferred to the claims of the creditors of the transferor. The fact that the persons controlling the vendee corporation are substantially the same persons as those making the transfer is a matter strongly indicating fraud." 12 Ruling Case Law, 480, and cases cited.

In weighing the testimony on the controverted questions which have been discussed the trial judge could properly consider the well established fact that *Werner Stein* ex-

ecuted the mortgage to his father with the intent to defraud creditors, the close relationship of the other parties with him, the probability that they were not ignorant of his financial condition under all the circumstances, in connection with other circumstances to show that there was willingness on their part to shield him from his creditors.

The court had the right to draw legitimate inferences from the facts proven and we should not disturb those inferences unless they are clearly wrong. *Ripon H. Co. v. Haas,* 163 Wis. 592, 158 N. W. 330, and cases cited there.

Appellants' counsel argue that the damages found by the jury are excessive; that they should have been limited to interest on the value of the motor truck for the reason that the trustee was in no situation to use the property, and they cite authorities for this position. These authorities referred to the assessment of damages in cases where the property consisted of stocks of merchandise or similar property which could not have been used to produce a revenue.

The plaintiff elected to take judgment under the statutes for the recovery of the property with damages for its detention. The defendants filed the necessary bond and kept possession of the truck and continued to use it during the litigation. We see no reason why the trustee might not have derived revenue from the property during the litigation if it had been in his possession, by renting it, although it might have been necessary to obtain the permission of the bankruptcy court. The jury assessed the damages on undisputed testimony and their finding should stand.

*By the Court.*—Judgment affirmed.